## DEMING INV. CO. v. BRUNER OIL CO. *et al.*

No. 2057.   Opinion Filed February 3, 1913.

**INDIANS**—Creek Allotment—Descent and Distribution.   Where a member of the Creek Tribe of Indians, entitled to be enrolled under section 21 of act of Congress approved June 28, 1899, entitled, ''An act for the protection of the people of the Indian Territory and for other purposes'' (30 St. at L. p. 495), died subsequent to the first day of April, 1899, but before having received the allotment of lands to which he was entitled as a member of said tribe of Indians, said lands, by reason of section 28 of the Original Treaty with the Creek Tribe of Indians (31 St. at L. p. 861), descended to his heirs, free from restrictions upon alienation imposed by section 7 of said Original Creek Treaty and by section 16 of the Supplemental Treaty with the Creek Tribe of Indians (32 St. at L. p. 500), and a warranty deed, executed by the heirs after the allotment of said lands to them, conveyed the fee simple title thereto.

(Syllabus by the Court.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by the Deming Investment Company against the Bruner Oil Company and the Payne Oil Company.   Judgment for defendants, and plaintiff brings error.   Reversed and remanded, with directions.

*Biddison & Campbell,* for plaintiff in error.

*Benjamin F. Rice* and *Thomas D. Lyons,* for defendants in error.

HAYES, J.   Plaintiff in error brought this action in the court below to quiet its title to 40 acres of land situated in Tulsa county.   The cause was tried to that court upon an agreed statement of facts, the substance of which we here state:   Martha Hohlahta, who was a full-blood citizen of the Creek Nation, died in May, 1899, at the age of two years.   She left no surviving brothers or sisters or descendants of such, and left as her only heirs at law her father and mother, Cheparn and Lucy Hohlahta, who were also full-blood citizens of the Creek Nation.   On the

6th day of April, 1904, said Martha Hohlahta was enrolled by the Commission to the Five Civilized Tribes as a full-blood Creek Indian, and the lands in controversy were allotted to the heirs of deceased as her homestead on the 13th day of the following July, and a certificate issued to them. Subsequently, a patent, executed by the chief of the Muskogee or Creek Nation and approved by the Secretary of the Interior conveying said 40 acres of land to the heirs and designating the same as a homestead, was filed for record with the Commission to the Five Civilized Tribes. On the 27th day of May, 1905, the said Cheparn and Lucy Hohlahta executed and delivered their warranty deed to one Charles W. Lefler, conveying said lands. On the 18th day of January, 1906, Lefler executed and delivered his warranty deed conveying the same lands to one J. C. Eddy, who took the title thereto as trustee for plaintiff in error, and who thereafter conveyed by warranty deed the lands to plaintiff in error. All of the deeds mentioned herein were duly recorded prior to the time of the execution of the leases sought to be canceled by this action. On the 15th day of April, 1907, Cheparn and Lucy Hohlahta executed and delivered an oil and gas mining lease on part of the land to defendant Bruner Oil Company, and on the same day they executed a similar lease on a part of the land to the Payne Oil Company, both of which leases have been duly recorded. Said leases constitute the cloud upon plaintiff's title of which it now complains.

It is agreed that at the time of the death of the said Martha Hohlahta the laws of the Creek Nation governed the descent of her allotment, and that pursuant to those laws, Lucy Hohlahta, the mother of deceased, was the sole heir to inherit the land in controversy. The question of law this proceeding presents is a construction of the provisions of the treaty with the Creek Tribe of Indians under which the allotment was made to the heirs of the deceased Martha Hohlahta.

Section 16 of the treaty of the United States with the Creek Tribe of Indians (32 St. at L. p. 500), generally known as the Supplemental Treaty with the Creek Tribe of Indians, provides:

"Lands allotted to citizens shall not in any manner whatever or at any time be encumbered, taken, or sold to secure or satisfy

any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior.   Each citizen shall select from his allotment 40 acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for 21 years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear.   Selections of homesteads for minors, prisoners, convicts, incompetents and aged and infirm persons, who cannot select for themselves, may be made in the manner provided for the selection of their allotments, and if for any reason such selection be not made for any citizen it shall be the duty of said commission to make selection for him.   The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue, then he may dispose of his homestead by will, free from the limitation herein imposed, and if this be not done, the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed.   Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

The foregoing section is substantially the same as section 7 of the Original Creek Treaty (31 St. at L. p. 861), to which the treaty of 1902 was amendatory and supplementary.   It is contended by defendants in error that by virtue of the first sentence of the foregoing section of the treaty no land allotted to any citizen of the Creek Tribe of Indians could be alienated at any time before the expiration of five years from the ratification of that treaty, except with the approval of the Secretary of the Interior.   The deed from the heirs of deceased, Martha Hohlahta, to the person from whom plaintiff deraigns its title was executed before the expiration of five years from the ratification of said agreement, and was never approved by the Secretary of the Interior; but said lands were not allotted to the heirs of deceased by virtue of this section, or by virtue of any preceding

section of the treaty. Section 28 of the Original Treaty, in part, provides:

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section 21 of the act of Congress approved June 28, 1898, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

It was under the foregoing section that the lands in controversy were allotted and patented to the heirs of deceased. It is contended, however, by defendants in error that the five years' restriction upon alienation imposed by section 16 of the Supplemental Treaty applies to the heirs of citizens who died before allotment was made, as well as to heirs of citizens to whom allotments were made before their death. The recent case of *Mullen et al. v. United States,* 224 U. S. 448, 56 L. Ed. 834, although the foregoing provisions of the Creek Treaty were not directly involved in that case, sheds some light upon its construction. The court had under consideration in that case certain provisions of the Chickasaw and Choctaw Treaty with the United States, imposing restrictions upon the alienation of lands allotted to members of those two tribes of Indians. Section 12 of said treaty (32 St. at L. p. 641, c. 1362) requires each member of the tribe at the time he selects an allotment to designate a homestead out of his allotment, which is made inalienable during the lifetime of the allottee, not exceeding 21 years from the date of certificate of allotment. Section 16 provides that all lands allotted to members of the tribe, except such land as is set aside to each for a homestead, shall be alienable after issuance of patent as follows: One-fourth in acreage in one year; one-fourth in acreage in three years; and the balance in five years, in each case

from date of patent.   Section 22 of the same treaty reads in part as follows:

"If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land, the lands, to which such person would have been entitled if living shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent and distribution as provided in chapter 49 of Mansfield's Digest of the Statutes of Arkansas."

The question involved in that case was whether lands allotted in the name of deceased Indians under the foregoing provisions of section 22 were subject to the restrictions upon alienation imposed by sections 12 and 16.   In holding that such restrictions did not apply to the lands allotted to deceased members of the tribe, the court, speaking through Mr. Justice Hughes, who delivered the opinion, made reference in the opinion to the provisions of the Creek treaties here involved, and to an opinion given to the Interior Department by the then Assistant Attorney General for the Interior Department (now Mr. Justice Van Devanter), in which he said:

"After a careful consideration of the provisions of law pertinent to the question presented, and of the views of the Commissioner of Indian Affairs and the Commission to the Five Civilized Tribes, I agree with the latter that in all cases where allotment is made directly to an enrolled citizen, it is necessary that a homestead be selected therefrom and conveyed to him by separate deed; but that where the allotment is made directly to the heirs of a deceased citizen, there is no reason or necessity for designating a homestead out of such lands, or of giving the heirs a separate deed for any portion of the allotment, and therefore advise the adoption of that rule."

This language of the Assistant Attorney General is quoted with approval and made the basis of the court's reasoning by analogy to the conclusion it reached in the application of the Chickasaw and Choctaw Agreement; and in speaking of the provisions of Creek, Chickasaw and Choctaw treaties, after noticing a slight difference in the language thereof, the court said:

"In both cases the lands were to go immediately to the heirs, and the mere circumstance that under the language of the statute

the allotment was made in the name of the deceased ancestor (referring to the Chickasaw and Choctaw Treaty) instead of the names of the heirs, furnishes no reason for implying a requirement that there should be a designation of a portion of the lands as homestead."

This expression of that court should be taken as high authority, if not decisive, that the portion of section 7 of the Original Creek Agreement and of section 16 of the Supplemental Creek Agreement, *supra,* requiring the selection of a homestead of 40 acres by each citizen out of his allotment and imposing restrictions upon its alienation for a period of 21 years, has no application to allotments made under section 28; and if those sections apply at all to allotments made under section 28, they do so only in part. But there is no language in either section 7 of the Original Treaty or in section 16 of the Supplemental Treaty, or in section 28, specifically expressing an intent that any of the provisions of the two first-named sections shall apply to allotments made under the last section to the heirs of persons who died subsequent to the first day of April, 1899, but before receiving their allotments. Two classes of allotments of land are provided for by the treaty: first, an allotment to each member of the tribe that he is entitled to receive because of his membership in the tribe and his interest in the tribal property; and, second, an allotment which the treaty deems just for the heirs to receive, not because they are members of the tribe, but because they are heirs of a person who would have been entitled to take an allotment had he lived until the ratification of the treaty. It was with the former of these classes of allotments, we think, section 16 of the Supplemental Treaty and its counterpart, section 7 of the Original Treaty, intended to deal, and that it intended to divide the lands embraced in such allotments into two classes: consisting of those upon which there is a restriction upon the alienation for a period of five years from the ratification of the treaty, and of those upon which there is restriction upon the alienation for a period of 21 years; but section 28 provides for no such division of the lands allotted thereunder, and makes no reference to restrictions upon the alienation thereof. An Indian having died before taking an allotment, the land he

was entitled to receive as his allotment descends directly to his heirs under the law of descent and distribution named, and shall be allotted and distributed to them accordingly. The land allotted to the heirs of deceased is neither homestead nor surplus; and there is no more reason for applying the restrictions upon alienation of the surplus to this entire allotment than there is to apply the restrictions upon the alienation of homesteads.

Our attention has been called to the fact that the views we here express are in conflict with decisions of this court in *Barnes v. Stonebraker,* 28 Okla. 75, 113 Pac. 903, and *Sanders v. Sanders et al.,* 28 Okla. 58, 117 Pac. 338. After a more thorough consideration of the treaty provisions involved, and in the light of the expressions of the Supreme Court of the United States in *Mullen et al. v. United States, supra,* whose decisions on these questions are controlling, we are of the opinion that in so far as said cases are in conflict with the views herein expressed, the same should, in harmony with the decision of this court in *Rentie et al. v. McCoy et al., ante,* be overruled.

It follows that the judgment of the trial court should be reversed and the cause remanded, with direction to enter judgment in accordance with this opinion.

All the Justices concur.