## YOUNG *et al* v. CHAPMAN.

No. 2470.   Opinion Filed February 11, 1913.

(130 Pac. 289.)

1. **EJECTMENT—Title to Maintain—Defenses—Unexpired Lease.** In an action in ejectment, plaintiff must recover on the strength of his own title, and not on the weakness of his adversary's, and where both parties claim title from a common source, all things else being equal, the first conveyance, although only a lease, if valid and unexpired, will entitle defendant to a judgment as against plaintiff, who claims under a deed. See the opinion for the facts.

2. **STATES—Territory—Leases—Validity—Registration.** Instruments executed in the Indian Territory prior to statehood, which were valid, under the laws in force in that jurisdiction, without registration, are valid, after statehood, notwithstanding noncompliance with registration laws extended over and put·in force in the state by the Enabling Act and the Schedule to the Constitution. Armstrong, Byrd & Co. v. Phillips, 28 Okla. 808, 115 Pac. 870.

3. **VENDOR AND PURCHASER—Sale by Landlord—Notice to Purchaser.** Under the laws in force in the Indian Territory prior to statehood, where a tenant is in the actual, open, and exclusive possession of real estate at the time it is sold by his landlord, the purchaser is chargeable with notice of all the legal or equitable rights of the tenant therein.

(Syllabus by Robertson, C.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by James A. Chapman against L. C. Young and

John Adams. Judgment for plaintiff, and defendants bring error. Reversed.

*Lewis C. Lawson,* for plaintiffs in error.
*Mann, Rogers & Harris,* for defendant in error.

Opinion by ROBERTSON, C. This action in ejectment was commenced in the district court of Hughes county on December 20, 1909. Trial was had to a jury on November 22, 1910, resulting in a verdict by direction of the court, in favor of plaintiff and against defendants, for the possession of the land in controversy and for damages. Motion for new trial being duly presented and overruled, defendants appeal, and assign many alleged errors of the trial court, any one of which, as they contend, would be sufficient to authorize a reversal of the judgment entered in the lower court.

The first question to challenge our attention is the instruction of the court to the effect that defendant in error, Chapman, had the legal title to the land in controversy, and therefore was entitled to recover. The facts relative to this subject are as follows: the land sought to be recovered is part of an allotment, set apart from the general domain of the Creek Nation, to the heirs of Ida McCosar, a full-blood Creek Indian, who died on or about the 16th day of July, 1900, leaving surviving her her father Bunnie McCosar, Elliott McCosar, a brother, and Kate Gooden, nee McCosar, a sister, all full-blood Creek Indians. Bunnie McCosar, the father, was the guardian of Kate and Elliott; the mother having died before Ida.

On August 25, 1905, Bunnie McCosar, the father and guardian, leased the land in question for a period of five years, to J. J. Armstrong, who, for a valuable consideration, sold and transferred the same to plaintiff in error L. C. Young, who sublet the same to John Adams, the other plaintiff in error, and who held and occupied said land at the time this action was instituted. It appears that on July 10, 1907, Bunnie McCosar and wife attempted to convey said lands to the Hughes County Land Company; that on September 25, 1907, they also attempted to con-

vey the same to the Sherman Land Company; that on September 26, 1907, Kate Gooden attempted to convey the same to the Sherman Land Company; that on December 17, 1909, the said Sherman Land Company attempted to convey the same to Chapman, the defendant in error; that on October 5, 1909, Bunnie McCosar and wife, Kate Gooden and husband, and Elliott McCosar, joined in another deed to Chapman, which last-named deed was approved by the county court of Hughes county on the same date.

Counsel for plaintiffs in error, in an elaborate brief, insists that we pass upon the question of the title to the land in controversy. This is wholly unnecessary except in so far as the decision of this case is concerned. The record before us does not contain sufficient necessary facts to warrant this court in attempting to pass upon the whole title, and the character of the estate claimed by plaintiffs in error is not such as will permit them to insist upon such determination. There can be no dispute, however, but that Bunnie McCosar and his two children, Elliott McCosar and Kate Gooden, nee McCosar, were the owners of the land in controversy under the facts of this case, at the time they executed the lease to Armstrong, and whether they took by inheritance or purchase, or whether the land constituted an ancestral estate, or whether it was a new acquisition, need not, of necessity, concern us at this time. Under the doctrine first announced in this court in *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566, and *Hoteyabi et al. v. Vaughn et al.,* 32 Okla. 807, 124 Pac. 63, and later by the Supreme Court of the United States in *Mullen et al. v. United States,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, the fee to the land in question, at the death of Ida McCosar, passed directly to, and vested in, her heirs, and the same became immediately alienable; the Act of Congress of April 21, 1904, c. 1402, 33 St. at L. p. 204, having removed all restrictions thereon. *Godfrey v. Iowa Land & Trust Co.,* 21 Okla. 293, 95 Pac. 792; *Goat v. U. S.,* 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841; *Rentie et al. v. McCoy et al.,* 35 Okla. 77, 128 Pac. 244; also, *Parkinson v. Skelton,*

33 Okla. 813, 128 Pac. 131. The heirs of Ida McCosar took
the land described under and by virtue of section 28 of the Orig-
inal Creek Agreement (Act March 1, 1901, c. 676, 31 St. at L.
863) free from restrictions. Therefore, if the heirs of Ida Mc-
Cosar took said land free from restrictions, and with full power
to alienate, it necessarily follows that the lease to J. J. Arm-
strong, executed August 25, 1905, was valid (*Groom v. Wright,*
30 Okla. 652, 121 Pac. 215), and this lease having been executed
long prior to the deed, under which defendant in error claims,
vested in plaintiffs in error, so far as the right of possession is
concerned, a title superior to that of defendant in error. In
other words, defendant in error, claiming title to said land
through a deed executed subsequent to the lease, took the same
subject to the rights of plaintiffs in error, who were rightfully
in possession of the premises at the time of the commencement
of this action. In an action in ejectment begun in the Indian
Territory, prior to statehood, plaintiff must recover on the
strength of his own title, and not on the weakness of his adver-
sary's and where both parties claim title and right of possession
from a common source, all things else being equal, the first con-
veyance, though but a lease, if valid and unexpired, will entitle
defendant to a judgment, as against plaintiff, who claims under
a deed. It is contended, however, in this connection, that, the
execution of the lease not having been proved, the judgment
should not be reversed, having been entered for the right party.
This contention cannot be sustained. The converse is true.

It is also further urged that the lease was void for that it
had never been recorded. Such a lease as the one under con-
sideration, having been executed in the Indian Territory prior to
statehood, was valid, and its validity was in no wise impaired by
the advent of statehood, and the extension of the Oklahoma
recording laws. In *Armstrong, Byrd & Co. v. Phillips,* 28 Okla.
808, 115 Pac. 870, it is said in the syllabus:

"Instruments executed in the Indian Territory prior to
statehood which were valid, under the laws in force in that
jurisdiction, without registration, are valid after statehood, not-

withstanding noncompliance with the registration laws extended over and put in force in the state by the Enabling Act and the Schedule to the Constitution."

This authority sustains fully the validity of the lease as to the objection urged against it.

It is next insisted by defendant in error that even though the validity of the lease be sustained, though not recorded, Chapman, the purchaser of the title, had no actual notice of plaintiffs in error's adverse claims or of their possession of the premises. In *Whitham v. Lehmer,* 22 Okla. 627, 98 Pac. 351, it is held that where a tenant is in the actual, open, and exclusive possession of real estate at the time it is sold by his landlord, the purchaser is chargeable with notice of all the legal or equitable rights of the tenant therein. See, also, *Simmons Creek Coal Co. v. Doran,* 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Wade on Notice, sec. 275; Devlin on Deeds, sec. 770; Jones on Landlord & Tenant, sec. 427; *Jowers v. Phelps, Adm'r,* 33 Ark. 465; *Friedlander v. Ryder et al.,* 30 Neb. 783, 47 N. W. 83, 9 L. R. A. 700. Thus, even though the deeds from McCosar and children to Chapman were valid and conveyed good title, yet the lease being also valid, and of prior date, Chapman would take the land subject to the tenant's legal and equitable rights, and inasmuch as the plaintiff in ejectment must recover on the strength of his own title, and not on the weakness of his adversary's, this in itself would require the reversal of the judgment herein. It might be well in passing to say that there is ample evidence in the record to warrant a jury in finding that Chapman had actual notice of the possession of the premises by plaintiffs in error.

It is therefore unnecessary to pass on the other questions raised by plaintiff in error. For the various reasons hereinabove noticed, it necessarily follows that the judgment of the district court of Hughes county should be reversed.

By the Court: It is so ordered.