## OATES *et al.* v. FREEMAN.

No. 5790.    Opinion Filed November 9, 1915.

On Second Petition for Rehearing, May 2, 1916.

.(157 Pac. 74.)

1. **APPEARANCE—Service by Publication—Waiver of Defects.**
Where a defendant, who has been served with summons by publication, enters a special appearance and moves to quash service by reason of alleged defects in the affidavit and publication notice, which motion is overruled, afterwards answers and asks for affirmative relief, he thereby invokes the jurisdiction of the court in a matter not necessary to his defense, and thereby waives any defect in the service by publication.

2. **PROCESS—Service by Publication—Affidavit—Notice.** The affidavit to obtain service by publication and the notice, which are set out in full in the statement of the case, examined and **held** to comply with the statutory provisions for obtaining service by publication.

3. **PLEADING—Improper Joinder of Causes—Waiver of Defect—Failure to Demur.** Where a petition contains three separate causes of action, if they are improperly joined, the proper practice is to attack it by demurrer, and if this is not done, the defect is waived, and cannot be taken advantage of by a motion to require the plaintiff to elect on which cause of action he will rely.

4. **INDIANS—Creek Allotment—Restrictions.** Where a Creek Indian dies prior to allotment, the allotment must be made under section 28 of the Creek Agreement (Act March 1, 1901, chapter 676, 31 Stat. 869), as amended by the Supplemental Creek Agreement (Act June 30, 1902, chapter 1323, 32 Stat. 500), and it descends to his heirs, free from all restrictions, both as to the homestead and surplus, but where the allottee dies after the certificate of allotment has issued, but before patent, the homestead descends free from restrictions, but the surplus is restricted.

5. **SAME—Alienation of Restricted Lands—Validity of Deeds.** Where

restricted land is sold prior to the removal of restrictions, and a deed made therefor, and at the time of making such deed only a part of the consideration is paid, and which deeds were to serve as contracts to convey as soon as the restrictions were removed, and at the time such deeds were made the grantee agreed to have the restrictions removed, and after the restrictions were

removed by the Act of Congress of April 26, 1906, the grantee
took new deeds in pursuance of said agreement, **held** such last
deeds are void under the provisions of section 16 of the Creek
Supplemental Agreement (Act June 30, 1902, chapter 1323).

6.     **SAME—Prerequisite to Cancellation—Return of Consideration.**
Where a conveyance has been made in violation of the restrictions
imposed by section 16 of the Supplemental Creek Agreement, the
return of the consideration cannot be regarded as an essential
prerequisite to cancellation, for those who deal with the Indian
contrary to these provisions are not entitled to insist that they
should keep the land if the purchase price is not repaid, and thus
frustrate the policy of the statute.

7.     **EQUITY — Maxims—Application — Enforcement of Right.**  The
maxim that he who asks equity must do equity does not apply to
cases where the party is not seeking relief under the general
equitable jurisdiction of the court, but is seeking to avail himself
of a substantial right under the express provisions of a statute
passed to protect the right he is seeking to enforce.

ON PETITION FOR REHEARING.

8.     **INDIANS—Alienation of Lands—Restrictions—Illegal Contract
—Proof.**  The making of a contract or agreement to convey in
violation of the terms of the provisions of section 16 of the act
of June 30, 1902 (32 Stat. 503, chapter 1323), and section 19 of the
Act of April 26, 1906 (34 Stat. 144, chapter 1876), is not to be
inferred alone from the fact that the heirs executed a deed for the
restricted land during the period of restrictions, and the grantee
caused the deed to be recorded, and after the removal of re-
strictions a deed was executed to the same grantee, but the mak-
ing of the prohibited contract or agreement must be found from
all the facts connected with the transaction.

(Syllabus by Devereux, C.)

*Error from District Court, Okmulgee County;
Wade S. Stanfield, Judge.*

Action by John Freeman against Edward Oates and
others.   Judgment for plaintiff, and defendants bring
error.   Reversed in part and affirmed in part.

This was an action to quiet title to the northwest
quarter of section 7, township 13 north, range 15 east.
On May 4, 1899, this land was allotted to Louis Freeman,

a three-quarter blood Creek Indian, and certificates of allotment were duly issued to him. Louis Freeman, the allottee, died intestate, and leaving no surviving children, or issue of children, widow or mother, and no debts, but leaving the plaintiff, his father, and two brothers, and one sister. On May 3, 1903, two patents were issued in the name of Louis Freeman, one for lot 1, section 7, township 13 north, range 15 east, as the homestead, containing 30.99 acres, and the other also in the name of Louis Freeman for the remainder of the quarter section for his surplus allotment, and these patents were duly approved by the Secretary of the Interior on June 11, 1903. On May 5, and April 27, 1905, the plaintiff executed two deeds for this land to the defendant Edward Oates, one for the allotment, exclusive of homestead, and the other for the homestead. These deeds recited that the plaintiff conveyed all the right, title, and interest in this land which he inherited from his deceased son, Louis Freeman. About the same time Oates obtained deeds from the brothers and sister of the deceased allottee for any interest they had in the land as his heirs. On April 27, 1906, the plaintiff executed to Oates another deed for this land, and about the same time deeds were also executed to Oates by the brothers and sister. Oates conveyed to Mrs. Elizabeth Lowe, on May 17, 1909, and she having died during the pendency of this action, it was duly revived, and her heirs, the plaintiffs in error James G. and Nellie Lowe, were made parties. The petition further alleges, in substance, that all of the deeds executed in 1906, after the removal of the restrictions, are null and void, because they were made pursuant to the deeds executed in 1905, which deeds were to serve and be contracts between the parties to convey this land as soon as the restrictions against alienation

were removed, and were made in ratification and confirmation of the deeds of 1905, and no other consideration was agreed or stipulated to be paid on the dates of the deeds of 1905, a portion of the consideration being paid after the execution of the deeds of 1905, and the remainder after the execution of the deeds of 1906. The petition further alleged, in substance, that the deeds were given by the grantors pursuant to a verbal understanding made on or about April 24, 1905, with Oates that he would have the restrictions removed from this land, and to that end the grantors filed a petition with the Indian agency at Muskogee on or about April 26, 1905, for this purpose, but it was never acted on by the Secretary of the Interior, and that in pursuance of this agreement Oates took the deeds of 1905, so that he could obtain further deeds from the grantors as soon as the restrictions were removed, and that the deeds of 1906 were given in consummation of this agreement. The petition further alleges that the defendant Lowe was not an innocent purchaser.

The petition states three causes of action, and the above is an abbreviation of the allegations of the first cause of action, which was the only one considered by the court in rendering judgment.

The plaintiff being unable to get personal service on the defendant filed the following affidavit to obtain service by publication:

"Herbert E. Smith, being duly sworn according to law, says: That he is the attorney for the plaintiff above named, John Freeman, above-named plaintiff. That on the 3d day of August, A. D. 1911, he caused a summons to be issued in the above-entitled cause against the above-named defendants Edward Oates and Elizabeth Lowe to the sheriff of Okmulgee county, Oklahoma, but was unable

with due diligence to make service upon said defendants within said state, and said sheriff has returned said summons as to said defendants being unfound in said county, and plaintiff is unable to serve said summons upon defendants, or either of them, within the State of Oklahoma. That said defendants, being nonresidents of Oklahoma, claim some right, title, and interest in real estate situate in Okmulgee county, Oklahoma. Affiant further says that this action is brought for the cancellation of the deeds and mortgages (describing the various instruments),. for the rescission of said contracts by the plaintiff, and, in default thereof, for a vendor's lien upon said real estate, in the sum of $3,000, and in excluding the said defendants, and each of them, from any and all interest in and to said real estate, which they may have or claim therein by virtue of said deeds and mortgages or the possession of the same, and vesting the plaintiff herein with the title to said real estate free and clear of all claim, right, interest, or title of the defendants, and each of them; that the plaintiff is unable to procure personal service upon the defendants, or either of them, because they are nonresidents of the State of Oklahoma, and he. has been and still is unable to make service of said summons upon them within the State. of Oklahoma, and that the said plaintiff wishes to obtain service on said defendants by publication; and further affiant saith not."

On this affidavit the following notice was published:

"IN THE DISTRICT COURT OF OKMULGEE COUNTY,
STATE OF OKLAHOMA.

"John Freeman v. Edward Oates and Elizabeth Lowe.
"Said defendants Edward Oates and Elizabeth Lowe, nonresidents of the State of Oklahoma, will take notice that they have been sued in the above-named court for the cancellation of certain deeds and mortgages held by them covering the northwest quarter of section 7, township 13 north, range 15 east, containing 160 acres, more or less,

situated in Okmulgee county, Oklahoma, given to Edward Oates by William Freeman, Mary Freeman. Hughes, John Freeman, Jr., and the plaintiff, and by Edward Oates to Elizabeth Lowe, and mortgage from Elizabeth Lowe to Edward Oates, for the rescission of said deeds or contracts of the plaintiff, and in default thereof for a vendor's lien against said real estate in the sum of $3,000.00 and must answer the petition filed therein by said plaintiff on or before the 29th day of September, A. D. 1911, or said petition will be taken as true, and a judgment for said plaintiff in said action for such cancellation, rescission or vendor's lien in said amount, with interest and costs, will be rendered accordingly.

"Dated this 12th day of August, 1911.

"HERBERT E. SMITH, *Atty. for Pltf.*

"Attest: ED NERN, *District Clerk,* by ANNA GALLAGHER, *Deputy.*"

The defendants entered special appearance, and moved to quash the service by publication, on the grounds:

(1) The affidavit for service by publication is fatally defective in the following particulars: (a) Said affidavit contains no allegation that plaintiff with due diligence is unable to make service of summons on this defendant in Oklahoma. (b) Said affidavit contains no allegation that this defendant is a nonresident of the State of Oklahoma. (c) Said affidavit contains no allegation that at the time said affidavit was filed this defendant was absent from the State of Oklahoma. (d) Said affidavit contains no allegation that service of summons cannot be made on this defendant within the State of Oklahoma. (e) Said affidavit does not contain any statement or showing that this case is one of those mentioned in section 5612 of Snyder's Statutes of Oklahoma.

(2) The publication notice made and filed in this case does not state what judgment or the nature of the judgment that may or will be rendered herein against this de-

fendant or the property described · in the petition in the event of the default of the defendant.

This motion was overruled and exceptions saved. The fendants also demurred to the petition, which demurrer was overruled and exceptions saved, and also asked that the plaintiff be required to elect on which one of the causes of action set out in the petition he would stand. The trial . court ruled that the plaintiff must elect, but reserved its decision, and in the judgment considered only the first cause of action.

The defendants answered, but, in view of the findings of the ·court, it is not material to set the allegations out, except that Elizabeth Lowe asked ˙for affirmative relief. The trial court found all allegations set out in the first cause of action to be true, and rendered judgment for the plaintiff quieting his title, and ordering the various deeds hereinbefore set out to be canceled. There was a motion for a new trial, which was overruled, and the defendants below bring the case to this court by petition in error and case-made.

*Orlando Swain,* for plaintiff in error Oates.

*Stubbs & Stubbs,* for plaintiffs in error Lowe.

*Herbert E. Smith,* for defendant in error.

Opinion by DEVEREUX, C. (after stating the facts as above). As far as the defendant Lowe is concerned, she has waived the defects, ˙if any, in the service by publication, for in her answer she asks for affirmative relief. See *Cameron v. Consolidated School District No. 1, of Kiowa County,* 44 Okla. 67, 143 Pac. 182, and cases therein cited. This does not apply to the defendant Oates, who does not ask for affirmative relief, but in

our opinion the affidavit and notice are not subject to attack on the grounds set out in the motion. The affidavit set out, "that the plaintiff is unable to procure personal service upon the defendants, or either of them, because they are nonresidents of the State of Oklahoma, and he has been, and still is, unable to make service of said summons on them in the State of Oklahoma," and the affidavit further states, "that said defendants being nonresidents of the State of Oklahoma, claim some right, title, or interest in real estate situate in Okmulgee county, Oklahoma," and proceeds to state that the action is brought for the cancellation of the deeds and mortgages covering the land in dispute, and gives the grantor and grantee in the deeds, and their dates. This affidavit fully complies with the requirements of Rev. Laws 1910, sec. 4722. In *Richardson v. Howard,* 51 Okla. 240, 151 Pac. 887, it is held:

"If the defendant is a nonresident, and the plaintiff has neither knowledge nor reason to think he may be served within the state, it is not necessary that the affidavit for publication should show any active diligence or effort to serve him within the state."

We have set out the affidavit and the motion to quash in full, and the affidavit shows that it does not contain the allegations on which the motion to quash is founded. Objection is also made to the publication notice, but an examination of the copy thereof, set out in the statement of the case, shows that it complies with the requirements of Rev. Laws 1910, sec. 4725.

In *McBride v. Hartwell,* 2 Kan. 410, it is held:

"An order of the clerk that defendants be notified of the pendency of the suit, giving the title and court, time

of filing the petition, and its prayer, and on what founded, and the day the defendants are required to answer, signed and sealed by the clerk with the name of the plaintiff's attorney appended, contains all the statutory requisites of a notice for publication of summons."

The next assignment of error is that the court did not require the plaintiff to elect as to which cause of action he proposed to rely on. If causes of action were improperly joined, the proper practice was to attack the petition by the demurrer. Rev. Laws 1910, section 4740, provides:

"The defendant may demur to the petition only when it appears on its face * * * 5th. That several causes of action are improperly joined."

Section 4741 provides:

"The demurrer shall specify distinctly the grounds of objection to the petition. Unless it do so, it shall be regarded as objecting only that the petition does not state facts sufficient to constitute a cause of action."

Section 4742 provides:

"When the defects do not appear upon the face of the petition, the objection may be taken by answer, and if no objection be taken by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court, and that the petition does not state facts sufficient to constitute a cause of action."

This section was construed by this court in *Choctaw, O. & G. R. Co. v. Burgess,* 21 Okla. 653, 97 Pac. 271, where it is held that misjoinder of causes of action should be raised by demurrer. It is true that there was a demurrer filed in this case, but it was only on the ground that the petition did not state a cause of action. The defendants

therefore waived the question of misjoinder. But in no event have the defendants been injured, for if the petition had been attacked by demurrer on this ground, the court could only have required the plaintiff to file several petitions, each including such causes of action as might have been joined (Rev. Laws 1910, section 4743) ; and the defendants can claim no prejudicial error in any event, for the trial court could only consider the first cause of action.

We come now to the most important question in the case, which is, was the land in the case restricted from alienation, and this presents two questions: First. Was the homestead restricted? Second. Was the surplus allotment restricted?

We will first consider the homestead, and it is well to bear in mind that the allottee was three-quarters Creek; that he died on March 27, 1902, leaving no wife, child, nor the issue of any child, and that the certificates of his allotment were issued prior to his death, but the deeds for the surplus allotment and homestead were separately issued in his name after his death. The Original Creek Agreement (31 Stats. at L. p. 861, c. 676, sec. 7), being the act of March 1, 1901, provides, in regard to homesteads:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, free from such limitation."

The limitation here referred to is that contained in the first portion of the same section, and the only question is, has this result been changed by the Supplemental Agreement of 1902 (Act of June 30, 1902, c. 1323, sec. 16, 32 Stats. at L. 500), which provides:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear. Selections of homesteads for minors, prisoners, convicts, incompetents and aged and infirm persons, who cannot select for themselves, may be made in the manner provided for the selection of their allotments, and if for any reason such selection be not made for any citizen it shall be the duty of said Commission to make selection for him. The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead, by will, free from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed. Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

It is argued that the provision in this section that the lands allotted to citizens shall not in any manner be alienated by the allottee, or his heirs, applies to the homestead as well as to the surplus allotment, but such construction would make the section contradict itself, for in the latter part thereof it expressly provides that under the conditions existing in the case at bar, unless the homestead is disposed of by will, it shall descend to the heirs free from the limitations imposed by the first part of the section. The fair construction of this section is, that the surplus allotment is restricted, and cannot be alienated, except with the approval of the Secretary of the Interior, but that the homestead goes to the heirs free from all restrictions, in cases like the one at bar. This construction gives full force and effect to all of the provisions of the statute, while the one contended for by the defendant in error would nullify that portion thereof providing that the homestead should go to the heirs free from the limitations imposed by the first part of the section, provided the allottee dies without children born after May 25, 1901, and does not dispose of it by will.

In Bledsoe's Indian Land Laws (2d Ed.) sec. 82, it is said that the homestead of a Creek allottee, where no issue was left surviving, born subsequent to May 25, 1901, descended free of all restrictions or alienations, and that such homestead lands were alienable by the heirs of the allottee immediately upon his death. In *Rentie v. McCoy*, 35 Okla. 77, 128 Pac. 244, where the question now under consideration was before the court, it is said:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901; but if he have no such issue, then he may dispose of his homestead by will, free

from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed."

The question before the court in that case was a construction of the Creek Original and Supplemental Agreements, in the case of a Creek freedman; and the same question, that is, that the homestead of a Creek freedman descends to his heirs unrestricted, was decided in *Deming Investment Co. v. Bruner Oil Co.*, 35 Okla. 395, 130 Pac. 1157; *Young v. Chapman*, 37 Okla. 19, 130 Pac. 289; *Bilby v. Gilliland*, 41 Okla. 678, 137 Pac. 687, 139 Pac. 988.

In *Re Lands of the Five Civilized Tribes* (D. C.) 199 Fed. 811, on page 826, in passing on the question of alienability of homesteads of deceased Creek allottees, the District Court of the Eastern District of Oklahoma arrived at the same conclusion—that the homestead descended to heirs in a proper case, free from restrictions. It is true in these cases that the allottee died prior to the issuing of the certificate of allotment, but we cannot see where this makes any distinction, as far as the homestead is concerned. The act of Congress above cited applies to the homestead irrespective of when it was acquired, and the fact that the deed for the homestead issued in the name of the dead allottee and not to his heirs can make no difference, because the plain intent of Congress was that the homestead, whenever acquired, should descend to the heirs free from restrictions, the intent of Congress being directed to the character of the land, and not to the time of the issuing of the patent or of the allotment certificate. The same question was decided in regard to the Choctaw and Chickasaw allotments in *Mullen v. United States*,

224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, and the reasoning of the court in that case applies equally to the Creek allotments. On page 456 of 224 U. S., on page 498 of 32 Sup. Ct., 56 L. Ed. 834, it is said:

"It is true that under the Creek Agreement in cases where the ancestor died before allotment, the lands were to be allotted directly to the heirs, while under the Choctaw and Chickasaw Agreement the allotment was to be made in the name of the deceased member and 'descend to his heirs.' This, however, is a merely formal distinction and implies no difference in substance. In both cases the lands were to go immediately to the heirs, and the mere circumstance that under the language of the statute the allotment was to be made in the name of the deceased ancestor instead of the names of the heirs furnishes no reason for implying a requirement that there should be a designation of a portion of the lands as homestead."

And see *United States v. Cook*, 225 Fed. 756, 141 C. C. A. 22.

We therefore hold that under the above authorities and under the proper construction of the act of Congress above cited, the homestead descended free from restrictions, and that the deeds to the homestead made in 1905 passed a good title to Oates.

In regard to the surplus allotment much we have said in regard to the restrictions on the homestead will apply. All of the cases above cited were those in which the Indian died prior to allotment, and the land was allotted under the provisions of section 28 of the Creek Supplemental Agreement, which provides for the allotment of lands where the Indian dies prior thereto, but in the case at bar the allottee had received his certificate of allotment, and the issuing of the patent related to the date of this

certificate. *Brady v. Sizemore*, 33 Okla. 169, 124 Pac. 615, affirmed on appeal to the Supreme Court of the United States, 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308. And the questions presented are the same as if the Indian had died after the patents were issued. To say that this surplus allotment descended without restrictions is to ignore that portion of section 16, above cited, which provides that land allotted to citizens shall not in any manner whatever be alienated by the allottee or his heirs, before the expiration of five years from the date of the approval of the Supplemental Agreement without the approval of the Secretary of the Interior. We can imagine no cases in which the statute could apply to heirs, except to land descended where the allottee dies after the allotment has been selected and certificate issued. As above said the homestead is expressly excepted from this rule by the statute, and this furnishes another argument why the statute intended to prevent the alienation of descended lands after the allotment was selected, because it was useless to exempt the homestead if the entire land was unrestricted, and this is in line with the holding in *Mullen v. United States*, 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, where it is held that if the Indian dies before allotment, separate patent shall not issue for the homestead and surplus lands.

In *Rentie v. McCoy*, 35 Okla. 77, 128 Pac. 244, the distinction seems to have been in the mind of the court, because it is expressly stated that the allottee died before his allotment was selected. And in *Deming Investment Co. v. Bruner*, 35 Okla. 395, 130 Pac. 1157, the distinction between the two classes of land is also pointed out, in the following language:

"Two classes of allotments are provided for by the treaty: First, an allotment to each member of the tribe that he is entitled to receive because of his membership in the tribe and his interest in the tribal property; and, second, an allotment which the treaty deems just for the heirs to receive, not because they are members of the tribe, but because they are heirs of a person who would have been entitled to take an allotment had he lived until the ratification of the treaty. It was with the former of these classes of allotments, we think, section 16 of the Supplemental Treaty and its counterpart, section 7 of the Original Treaty, intended to deal, and that it intended to divide the lands embraced in such allotments into two classes, consisting of those upon which there is a restriction upon the alienation for a period of five years from the ratification of the treaty, and of those upon which there is restriction upon the alienation for a period of 21 years; but section 28 provides for no such division of the lands allotted thereunder, and makes no reference to restrictions upon the alienation thereof. An Indian having died before taking an allotment, the land he was entitled to receive as his allotment descends directly to his heirs under the law of descent and distribution named, and shall be allotted and distributed to them accordingly. The land allotted to the heirs of deceased is neither homestead nor surplus; and there is no more reason for applying the restrictions upon alienation of the surplus to this entire allotment than there is to apply the restrictions upon the alienation of homesteads."

This distinction also seems to be kept in mind by the Supreme Court of the United States in *Mullen v. United States, supra,* for they say:

"It is true that under the Agreement in cases where the ancestor dies before allotment the lands were to be allotted directly to the heirs," etc.

And see *Welty v. Reed*, 219 Fed. 864, 135 C. C. A. 534.

We therefore hold that as to the surplus allotment the land was restricted. This being so, under the finding of fact by the court the deed for it was void. *Carter v. Prairie Oil & Gas Co.*, 58 Okla. —, 160 Pac. 319; *Nunn v. Hazelnigg*, 216 Fed. 330, 132 C. C. A. 474.

The rule to be deduced from a fair construction of the statute, and the authorities above cited, is, that where a Creek Indian dies prior to allotment, the allotment must be made under section 28 of the Supplemental Creek Agreement, and descends to his heirs free from restrictions, but where the allottee dies after the certificate of allotment has issued, but before patent, the homestead descends free from restrictions, but the surplus is restricted.

We are asked by the plaintiffs in error to examine the evidence. This being a case of equitable cognizance, the findings of the trial court are open to review in this court. We have carefully examined the evidence, and, in our opinion, the findings of the lower court are amply sustained thereby.

It is also argued in the brief that the plaintiff below is not entitled to relief, because he makes no offer to refund the purchase money received by him. It is undoubtedly a maxim in equity "that he who asks equity must do equity." But this does not apply to cases where a party is not seeking to avail himself of the ordinary equitable jurisdiction of the court, but is seeking to avail himself of a substantive right under the express provisions of a statute. See *Missouri & Kansas Trust Co. v. Krumseig*, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. Ed. 474. Congress,

exercising its power to deal with the affairs of the Indians, has seen fit to provide that deeds of restricted lands shall be absolutely void, and that any agreement or conveyance of any kind or character in violation of any of the provisions of the act shall be absolutely void, and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity. To allow a party to speculate in the purchase of restricted Indian lands, and if a suit is brought to set it aside, to require the return of the purchase money would be largely to bring about the conditions which Congress wished to avoid, for the purchaser would be acting with perfect safety, for if the Indian did not choose to attack his deed he would have the land, and if he chose to attack it, his purchase money must be returned. However, this very question was settled by the Supreme Court of the United States in *Heckman v. United States*, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820, where it is said:

"Where, however, conveyance has been made in violation of the restrictions, it is plain that the return of the consideration cannot be regarded as an essential prerequisite to a decree of cancellation. * * * Those who dealt with the Indians contrary to these provisions are not entitled to insist that they should keep the land if the purchase price is not repaid, and thus frustrate the policy of the statute. *United States v. Trinidad, etc., Co.*, 137 U. S. 160 [11 Sup. Ct. 57, 34 L. Ed. 640]."

See, also, *B. F. Collins Invest. Co. v. Board*, 46 Okla. 310, 148 Pac. 846.

We therefore recommend that the judgment of the trial court canceling the deeds as to the homestead allotment be reversed, and that in so far as it canceled the deed for the surplus allotment it be affirmed, and that in

pursuance of the provisions of section 5261, Rev. Laws 1910, the costs of this court be equally divided between the parties, and that the trial court .be directed to enter a decree in accordance with this opinion.

By the Court: It is so ordered.

ON SECOND PETITION FOR REHEARING.

Opinion by GALBRAITH, C. In the exhaustive brief filed on behalf of the plaintiffs in error in support of the second petition for rehearing and against the finding announced in the decision rendered herein, to the effect that the deeds for the surplus allotment, executed after the removal of restrictions, were void for the reason that they were executed in compliance with the terms of a contract to convey made prior to the removal of restrictions, counsel say:

"We want to make plain the distinction between a legal and illegal act. Deeds, leases, and other instruments affecting restricted lands, which are executed with the intention of obtaining the approval of the Secretary of the Interior, are not illegal, and do not violate any provision of the act of Congress. These instruments never become valid unless approved, but after approval they have the same validity as though the instrument had originally covered unrestricted land. On the other hand, instruments made for the purpose of evading the statute, without any intent of procuring the approval of the Secretary of the Interior, fall within the inhibitions of Congress."

This may be conceded to be a correct statement of law. Applied to the facts of the instant case it condemns the claim advanced by the plaintiffs in error. It is admitted that Oates took deeds from the heirs for the land prior to May 26, 1906, when the surplus allotment was re-

stricted, and that a small part of the consideration was then paid, and that these deeds were recorded, and that the deeds taken after the restrictions were removed recited the same consideration as that recited in the prior deeds, and that the remainder of this consideration was paid upon the execution of the deeds after the restrictions were removed.

It is contended, however, that the deeds taken for the restricted land were authorized by statute, inasmuch as the land might be sold and conveyed upon the approval of the Secretary of the Interior, and that it was the intention of the parties to submit these deeds to the Secretary for approval. It is sufficient to say in reply to this argument that it is not sustained by the evidence. The facts show that the deeds taken for the restricted lands were not executed in the manner prescribed by the Secretary for deeds presented for his approval, and these deeds were recorded in the recording office of the district where the land was located, and recited that the consideration therein had been paid in cash, while the rules of the department required the consideration to be paid into the department, and then the consideration recited in these deeds was much smaller than that alleged to be the value of the land in the sworn application, presented to the department for the removal of restrictions.

Supplemental Creek Agreement, sec. 16 (32 Stat. at L. 500), provides:

"Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void, * * * and no rule of estoppel shall ever prevent the assertion of its invalidity."

And in section 19, Act April 26, 1906 (34 Stat. L. 137), it is provided:

"Every deed executed before, or for the making of which a contract or agreement was entered into before, the removal of restrictions, be and the same is hereby declared void."

The contract or agreement to convey within the inhibition of this statute is not to be inferred, as we understand it, from the mere fact of the execution of a deed during the period of restrictions, and placing that deed of record and the execution of a deed to the same party for the same land after the restrictions have been removed. Such acts may properly be taken into consideration in determining the fact of the entering into the prohibited contract or agreement to convey, but the making of the unlawful contract must be found from all the facts and circumstances surrounding the transaction as disclosed by the evidence. The trial court found from the evidence that the deeds taken after the restrictions had been removed were taken in compliance with the terms of a contract or agreement to convey entered into between the heirs and Oates in violation of the terms of the statutes above quoted. This finding is supported by the evidence.

Much is said in the brief as to the Lowes being innocent purchasers; that the record showed the legal title to be in Oates, and the Lowes had no notice of the imperfection of his title, and having taken legal advice, and having been advised that the title of Oates was good, they ought to be protected as innocent purchasers. It is sufficient to say in answer to this contention that, the deed to Lowe's grantor being absolutely void by reason of the statute, no title could be transmitted to Lowe by reason

of or through such deed, regardless of Lowe's status, knowledge, or lack of knowledge.

The conclusion announced in the former opinion filed herein is adhered to, and the second petition for rehearing is denied.

By the Court: It is so ordered.