## KELLEY et al. v. NEW STATE LAND CO. et al.

No. 15959—Opinion Filed Dec. 8, 1925.

1. **Indians—Inherited Creek Allotment—Invalidity of Deeds by Heir as to Surplus.**

Where a Creek Indian on March 16, 1905, entered into a contract to sell the homestead and the surplus portions of an allotment, inherited from a deceased member of the Creek Tribe of Indians, and executed a deed thereto and received a portion of the consideration and was to receive the balance of the consideration and execute a new deed when good title could be conveyed, and, on September 27, 1906, and February 29, 1908, he executed new deeds in pursuance of said contract and received the full consideration agreed upon, held, that the deed of March 16, 1905, is void as to the surplus portion of said allotment, being in violation of section 16 of the Supplemental Creek Agreement (32 Stat. 503), and the deeds of September 27, 1906, and February 29, 1908, are void, being in violation of section 19 of the Act of Congress of April 26, 1906 (34 Stat. 144); and being void as in violation of the statute, supra, the subsequent purchasers took no title, and said conveyances are not susceptible of ratification, and no rule of estoppel shall prevent the assertion of their invalidity.

2. **Same—Validity of Deed as to Homestead Portion.**

On March 16, 1905, when the deed was executed to the inherited allotment, as set forth in paragraph 1 of this syllabus, the homestead portion of said allotment, under section 16 of the Supplemental Creek Agreement, was free from restrictions, since the deceased allottee left no issue born after May 25, 1901; and the fact that the unrestricted homestead portion was included in the same deed with the restricted surplus portion of said allotment for a definite money consideration, which the grantor received and retained, will not permit him to recover the homestead portion on the ground that the entire contract was void because it was unlawful to convey said surplus portion of the allotment.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Robert Kelley and Sukey Kelley

against New State Land Company et al. Judgment for defendants, and plaintiffs bring error. Reversed and remanded. with directions.

Neff & Neff and Allen & Underwood. for plaintffs in error.

Thrift & Davenport, for defendants in error Albert Kelley, John W. Vaughn. J. .E. Barnett, and James Barnett.

Davidson & Williams and Horace B. Clay, for defendants in error H. F. Wilcox Oil & Gas Company et al.

Opinion by JARMAN, C. This suit was instituted by Robert Kelley and his wife, Sukie Kelley, to recover possession of and to quiet title to the homestead and surplus portions of the allotments received by Wiley Kelley and John Kelley, duly enrolled full-blood Creek Indians. Wiley Kelley died intestate January 12, 1904, leaving surviving as his sole heir at law, John Kelley, who inherited the allotment of said Wiley Kelley, and, on January 17, 1904, John Kelley died intestate, not having any children born since May 25, 1901, and leaving surviving, Robert Kelley, the plaintiff, a duly enrolled Creek Indian of one-half degree Indian blood, as his sole heir at law, who inherited and became the owner of the allotments of Wiley and John Kelley. On March 16. 1905. Robert Kelley entered into an oral agreement with C. M. Bradley, president of the Bradley Realty Bank & Trust Company of Muskogee, then Indian Territory, to sell the allotments of Wiley and John Kelley for a consideration of $1000, $500 of which was paid in cash and the balance of $500 was represented by a note executed by Bradley to the plaintiff, which was to be paid when good title· could be made to said lands, and executed a deed to the Bradley Realty Bank & Trust Company to said lands. On September 27, 1906, the plaintiff demanded a further payment from Mr. Bradley on the purchase price. of said lands, and it developed that the plaintiff had lost the note for $500, and their conference resulted in Mr. Bradley causing the plaintiff to execute an agricultural lease on said lands to the International Land Company of Muskogee, of which Mr. Bradley was president and which was formed as the successor of the Bradley Realty Bank & Trust Company, and also a deed from the plaintiff to the International Land Company to said lands. At that time, September 27, 1906, Mr. Bradley paid the plaintiff $15 and executed a note to the plaintiff for and on behalf of the International Land Company for the sum of $483 to take the place of the note the·

plaintiff had lost and which bore the following indorsement: "This note is given as balance due in full on allotment of Wiley and John Kelley in sections 35 and 27, twp. 16 range 8," being the lands in question. This note was not delivered to the plaintiff, for the reason, as explained by Mr. Bradley to him at the time, that the first note might be found and the second note, by agreement, was placed in the ledger, evidencing the account in connection with this land transaction. On December 26, 1907, E. L. Halsell succeeded Mr. Bradley as president of · the Bradley Realty Bank & Trust Company and the International Land Company, and also the New · State Land Company, and the books of all three companies were turned over to Mr. Halsell. On February 29, 1908, the plaintiff returned to Muskogee for the purpose of collecting the balance due on the purchase price of said lands and found that Mr. Halsell had succeeded Mr. Bradley as president of the companies and was in charge of the offices. At that time, Mr. Halsell took another deed to said lands from the plaintiff to the New State Land Company and paid the plaintiff, according to the testimony of Mr. Halsell, the sum of $125, less the expense of an abstract, and, on March 31, 1911, Mr. Halsell, as president of the New State Land Company, paid the note that was outstanding and representing the balance due on the purchase price ·of said land, and took from the plaintiff a receipt showing payment in full .of the consideration for said lands, including the note for $500 which had been · lost.

The Bradley Realty Bank & Trust Company was organized for the purpose of buying and selling real estate, and had its offices at Muskogee; and the International Land Company was organized to take over · all of the farm lands and agricultural leases owned by the Bradley Realty Bank & Trust Company; and later the New State Land Company was· organized, according to the testimony of Mr. Bradley, to pick up those deals in a new company, where deeds had been taken in the names of the other companies prior to the time good title could be passed. All three companies had the same officers and occupied the same offices. Mr. Bradley was president of all three companies until he was succeeded by Mr. Halsell, who became president of all three companies.

. With reference to the deed of February 29, 1908, the following testimony was given by Mr. Halsell: ·

"Q. Did you consider you were carry-·

ing out Mr. Bradley's deals when you dealt with Robert Kelley? A. Only as to the deed to the International Land Company, if there had been anything from the Bradley Realty Bank & Trust Company—if there had been anything from the Bradley Realty Bank & Trust Company on the books brought forward or something."

Upon being asked why he took the last deed in the name of the New State Land Company, Mr. Halsell testified that it was done on the advice of his attorney, who advised that "I had better carry the deals on in the name of the New State; that is the one we formed to take good titles in." Mr. Halsell admits that, in taking the last deed of February 29, 1908, to the New State Land Company, he was carrying out the transaction of Mr. Bradley in procuring the execution of the deed by the plaintiff to the International Land Company on September 27, 1906. He does not claim to know anything about the transactions had by Mr. Bradley with the plaintiff prior to September 27, 1906, and the testimony of Mr. Bradley, that the deed of September 27, 1906, was taken pursuant to the contract made with the plaintiff on March 16, 1905, and that the new note executed on September 27, 1906, which was later paid by Mr. Halsell as president of the New State Land Company, was for the purpose of taking the place of the one that had been lost, which was executed on March 16, 1905, for a part of the purchase price of said lands, was uncontradicted; and the further testimony of Mr. Halsell, when he stated that his attorney had advised that he had better carry the deals on in the name of the New State, shows beyond question that all three deeds were taken pursuant to the contract made and entered into on March 16, 1905, and that the consideration agreed to be paid for said lands on March 16, 1905, entered into and formed a part of the consideration for each of the deeds executed by the plaintiff to the three companies whose interests were so interlocked as to amount to one company. The defendants claim title by mesne conveyance from these companies.

On March 16, 1905, the date of the agreement to sell said lands, and when the first deed was executed, the surplus portions of the allotments were restricted and inalienable by the plaintiff, and the contract and the deed, so far as they affect the surplus portions of the allotments, were void under section 16 of the Supplemental Creek Agreement of June 30, 1902 (32 Stat. 503), which provides that "any agreement or conveyance of any kind or character violative of

the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner and no rule of estoppel shall ever prevent the assertion of its invalidity." On account of the deeds of September 27, 1906, and of September 29, 1908, having been made pursuant to the contract entered into before the removal of restrictions upon the alienation of the surplus portions of said allotments, said deeds are void as to the surplus portions of said allotments, under section 19 of the Act of Congress of April 26, 1906, which provides that "every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared void;" and being void, the defendants. subsequent purchasers, took no title (Carter v. Prairie O. & G. Co., 58 Okla. 365, 160 Pac. 319); and no rule of estoppel shall ever prevent the assertion of the invalidity of such conveyances. Oates v. Freeman, 57 Okla. 449, 157 Pac. 74.

At the time of the execution of the first deed, March 16, 1905, the homestead portions of said allotments were free from restrictions and could be conveyed or alienated by the plaintiff under the provision of section 16 of the Supplemental Creek Agreement of June 30, 1902 (32 Stat. 503), which provides that:

"The homestead of each citizen shall remain after the death of the allottee for the use and support of the children born to him after May 25, 1901, but if he have no such issue, then he may dispose of his homestead by will free from. the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs free from such limitations according to the laws of descent herein otherwise prescribed."

As hereinabove stated, Wiley and John Kelley, the deceased allottees, left no children born since May 25, 1901, and therefore, the homestead portions of their allotments could be conveyed by the plaintiff. Oates v. Freeman, supra; United States v. Cook, 225 Fed. 756.

The plaintiffs contend, however, that since the contract to sell the homestead portions of said allotments, which were unrestricted, included the sale of the surplus portions of said allotments, which were restricted, the entire contract was void and was not severable, and cite in support thereof the case of Mann v. Brady, 80 Okla. 299, 196 Pac. 346. In the Mann-Brady Case, the allotment of Brady, a Creek Indian, was listed with Mann, a real estate agent, for sale, at a stip-

ulated price per acre; a portion of said allotment was restricted. Mann later brought an action against Brady for the amount of his commission, alleging that he had procured a purchaser ready, able, and willing to buy the land according to the terms of the contract. The court held that the allottee could not make a valid contract with reference to the sale of his allotment where a portion of the same was restricted, and that such contract was unenforceable, even as to the unrestricted portion. The contract in the Mann-Brady Case was void, and, being executory, the same could not be enforced; but in the instant case, the contract, although void, had been fully executed and performed, and the rule announced in the case of Starr v. Lowery, 102 Okla. 48, 220 Pac. 467, is controlling here:

"Even though the contract to convey the surplus allotment is conceded to have been void by reason of its connection with the restricted homestead allotment, the parties have fully performed the contract and as to the conveyance of the surplus allotments the parties were in pari delicto, and in these circumstances neither the courts of law nor of equity will interfere to grant any relief to the parties, but will leave them where they find them. The contract to convey, which plaintiff contends was illegal, was followed by actual conveyance of the surplus allotment, and so far as the deed is concerned the homestead can be disregarded, ignored, and separated from the surplus, and there remains a conveyance of the surplus supported by valid consideration."

Therefore, the homestead portions of said allotments were conveyed and title passed by the deed executed by the plaintiff on March 16, 1905.

The judgment of the trial court is reversed, and the cause remanded, with directions to render judgment for the defendants quieting title in them to the homestead portions of said allotment, according to their several interests, and to render judgment for the plaintiffs for the possession of and quieting title in them to the surplus portions of said allotments.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. pp. 517, § 81; 519. §§ 90 (Anno), 91. (2) 31 C. J. p. 517, § 81.