UNITED STATES v. COOK et al.

(Circuit Court of Appeals, Eighth Circuit. June 14, 1915.)

No. 4217.

INDIANS ⬳15—ALIENATION OF LANDS—ALLOTTEES—HEIRS—"LIMITATION."

Supplemental Creek Agreement of June 30, 1902, c. 1323, § 16, 32 Stat. 503, declaring that lands allotted to citizens shall not be alienated by the allottee or his heirs before the expiration of 5 years from date of approval of the agreement, except with the approval of the Secretary of the Interior, that each citizen shall select a homestead, which shall be inalienable for 21 years, and that the homestead of each citizen shall remain after the death of the allottee for the support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will "free from the limitation here imposed," and if this be not done the homestead shall descend to his heirs "free from such limitation," removes homesteads of such allottees as died intestate, leaving no issue born after May 25, 1901, from the restrictions, and they are subject to sale by heirs; the word "limitation" being used interchangeably with the word "restriction," and referring to the restrictions provided for.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. ⬳15.

For other definitions, see Words and Phrases, First and Second Series, Limitation.]

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Ralph E. Campbell, Judge.

Action by the United States of America against William J. Cook and another. From a judgment of dismissal, plaintiff appeals. Affirmed.

Archibald Bonds, of Claremore, Okl. (D. H. Linebaugh, of Muskogee, Okl., on the brief), for the United States.

William T. Hutchings, of Muskogee, Okl., for appellees.

Before ADAMS, Circuit Judge, and TRIEBER and REED, District Judges.

ADAMS, Circuit Judge. This suit was instituted by the United States under the act of May 27, 1908 (35 Stat. 312, c. 199), as interpreted by the Supreme Court in the case of Heckman v. United States, 224 U. S. 413, 443, 32 Sup. Ct. 424, 56 L. Ed. 820, to cancel a deed made January 1, 1903, by Mahala Colbert, Ellen Colbert, and Thompson Colbert, full-blood Creek Indians, to William J. Cook and William R. Robinson, the defendants in this case. At the trial below the facts appeared to be as follows: On July 26, 1901, an allotment certificate was issued as a homestead to William Colbert, a full-blood Creek Indian. On November 21, 1902, the allottee died, leaving no issue born after May 25, 1901, the date of the ratification of the original Creek treaty. Mahala, Ellen, and Thompson Colbert, full-blood Creek Indians, were his heirs. On January 1, 1903, the heirs executed the deed in question to Cook and Robinson. This last-mentioned deed

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was not approved by the Secretary of the Interior. On this state of facts the learned trial court dismissed the bill, and the government now appeals.

From the foregoing statement it appears that at the time of the death of the allottee the Supplemental Creek Agreement of June 30, 1902 (32 Stat. 500), was in force, and as the rights of the parties are to be determined by the provisions of that treaty, we here reproduce the pertinent portion of section 16, upon which their rights depend, as follows:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear. * * * The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will, *free from the limitation herein imposed*, and if this be not done the land embraced in his homestead shall descend to his heirs, *free from such limitation*, according to the laws of descent herein otherwise prescribed. Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

What is the limitation referred to in the italicized portions of the act, thus:

*"Free from the limitation herein imposed,"* and *"free from such limitation?"*

The government contends that if the word "limitation," as so used, has relation to any restriction upon alienation, it relates to the specific restriction of 21 years upon the alienation of homesteads, and has no relation to the general restriction of 5 years upon the alienation of any and all lands as first mentioned in section 16, and, as a consequence, that homesteads of deceased intestate allottees, who left no issue born after May 25, 1901, are still subject to the 5-year restriction upon alienation by the heirs, notwithstanding the italicized limitation.

While the section is complicated and seemingly contradictory in some respects, a critical examination of all its provisions, with a view to giving them force and effect, convinces us that Congress intended by the italicized words to absolve homesteads of such allottees as died intestate, leaving no issue born after May 25, 1901, from both the 21 and 5 year restrictions found in section 16, and therefore subject to sale by his heirs ad libitum.

But counsel for the government make a contention that the word "limitation" in the last part of section 16 does not refer to any restriction against alienation, either that of 5 years or 21 years, that it is an inapt word for such purpose, but does refer to the limitation of the *estate* "to the heirs born since May 25, 1901," and an ingenuous

argument is made that, as so interpreted, homesteads, so far as an allottee himself is concerned, remain inalienable for 21 years, and so far as heirs of the allottees are concerned they remain inalienable for 5 years after the approval of the Supplemental Creek Agreement. But this argument is not convincing. In the case of Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, the Supreme Court of the United States uses the word "limitation" interchangeably with the word "restriction," and in our opinion it is quite clear that the word "limitation" was intended by Congress to refer to the restrictions of 5 and 21 years theretofore in the section provided for.

The facts of this case are in substantial respects like those involved in the case of Rentie v. McCoy, 35 Okl. 77, 128 Pac. 244, wherein the Supreme Court of Oklahoma held that a conveyance to the heirs of an allottee in conditions and circumstances similar to those here involved were not subject to the 5-year restriction found in the first part of section 16 of the Supplemental Creek Agreement. To the same effect is the case of Reed v. Welty (D. C.) 197 Fed. 419. And these last two cases are referred to with approbation by the Supreme Court of the United States in the case of Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198, decided November 14, 1914.

We think these last-mentioned cases afford satisfactory authority for the conclusion we have reached in this case. The judgment is affirmed.