HARRIS v. BELL et al.

(District Court, E. D. Oklahoma.   June 20, 1916.)

No. 2015.

INDIANS ⬤15(1)—LANDS—ALIENATION BY HEIRS—DESCENT.

Land allotted by the Commission to the Five Civilized Tribes in the name of a deceased Creek child who was placed on the rolls pursuant to Act March 3, 1905, c. 1479, 33 Stat. 1048, but died before allotment, whether the title passes under the Original and Supplemental Creek Agreements or by virtue of Act April 26, 1906, c. 1876, § 5, 34 Stat. 138, or Act June 25, 1910, c. 431, § 32, 36 Stat. 863, descends to the heirs of the deceased child according to Mansf. Dig. Ark. §§ 2522–2545, free from any restrictions upon alienation.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 37, 38; Dec. Dig. ⬤15(1).]

In Equity. Suit by Annie Harris against Harry H. Bell and others. Decree for defendants.

J. R. League, of Tulsa, Okl., and Merwine & Newhouse, of Okmulgee, Okl., for complainant.

Gibson & Thurman, of Muskogee, Okl., F. F. Lamb, of Okmulgee, Okl., Ramsey & Thomas, of Muskogee, Okl., R. C. Martin and H. M. Kirkpatrick, both of Idabel, Okl., John S. Kirkpatrick, of Kansas City, Mo., Belford & Hiatt, of Okmulgee, Okl., and W. C. Franklin, of Muskogee, Okl., for defendants.

CAMPBELL, District Judge. The controlling facts in this case are set forth in an agreed statement of facts filed at the trial, to which reference is made without repeating them here. All the parties plaintiff and defendant agree that the title to the land in controversy was, by virtue of the arbitrary allotment and patenting of this land by the Commission to the Five Civilized Tribes in the name of Freeland Francis after his death, vested in his heirs. The chief questions raised between them are as to whether the Arkansas law or Oklahoma law determines who are the heirs and what, if any, restrictions upon alienation attached to this land in the hands of the heirs. It will therefore be assumed for the purpose of this case that title vested in the heirs of Freeland Francis. For reasons stated in an opinion recently rendered and filed in this court in No. 2175 Equity, Youngken et al. v. David et al., 235 Fed. 621, it is held that the restrictions imposed by sections 19 and 22 of the act of April 26, 1906 (34 Stat. L. 137), do not apply to the land in controversy in this case; the land not having been selected by or for or allotted to Freeland Francis during his lifetime. Freeland Francis was enrolled, and the allotment was made in his name pursuant to the following provision found in the Indian Appropriation Act of March 3, 1905 (chapter 1479, 33 Stat. L. 1071):

"That the Commission to the Five Civilized Tribes is authorized for sixty days after the date of the approval of this act to receive and consider applications for enrollments of children born subsequent to May twenty-five,

nineteen hundred and one, and prior to March fourth, nineteen hundred and five, and living on said latter date, to citizens of the Creek Tribe of Indians whose enrollment has been approved by the Secretary of the Interior prior to the date of the approval of this act; and to enroll and make allotments to such children."

By section 28 of the Original Creek Agreement (chapter 676, 31 Stat. L. 870) it was provided that all citizens having certain qualifications therein stated should be placed upon the tribal rolls. Then follows this provision:

"All children born to citizens so entitled to enrollment, up to and including the first day of July, nineteen hundred, and then living, shall be placed on the rolls made by said Commission; and if any such child die after said date, the lands and moneys to which it would be entitled, if living, shall descend to its heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly.

"The rolls so made by said Commission, when approved by the Secretary of the Interior, shall be the final rolls of citizenship of said tribe, upon which the allotment of all lands and the distribution of all moneys and other property of the tribe shall be made, and to no other persons."

By section 7 of the Supplemental Creek Agreement (chapter 1323, 32 Stat. L. 501) it was provided:

"All children born to those citizens who are entitled to enrollment as provided by the act of Congress approved March 1, 1901 (31 Stat. L. 861), subsequent to July 1, 1900, and up to and including May 25, 1901, and living upon the latter date, shall be placed on the rolls made by said Commission. And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein provided and be allotted and distributed to them accordingly."

Thus the legislation stood so far as relating to the enrollment and allotment of "new-born" Creek children until the passage of the Indian Appropriation Act of March 3, 1905, the applicable portion of which is quoted above. It will be noted that by this provision the Commission is "authorized" for 60 days to receive and consider applications for enrollment of children born subsequent to May 25, 1901, and prior to March 4, 1905, and living on the latter date, and further authorized to enroll and make allotments to such children. By reference to the section of the Supplemental Agreement above quoted it is seen that it only provided for the enrollment of children born up to May 25, 1901. This provision of the act of 1905 extends the time to March 4, 1905, so that children born up to that time may be enrolled and allotted. In this respect it is clearly passed with reference to this prior legislation, and is an amendment or modification of the Supplemental Agreement in this regard. Having been authorized to receive and consider such applications for enrollment, the Commission must look to the original and supplemental agreements for directions controlling the enrollment and allotment of such children. In case such child should receive its allotment during its lifetime, such allotment would be subject to the restrictions upon alienation provided by section 16 of the Supplemental Agreement, and would descend to his heirs in case of his death pending such restrictions subject to the

same. No provision is found in the act of 1905 as to the vesting of the lands and moneys in the heirs in case such child should die before allotment. If, however, the purpose of this act was merely to modify or amend the existing legislation or agreements so as to extend the benefits of enrollment and allotment to children born up to March 4, 1905, then its effect would be to substitute in section 7 of the Supplemental Agreement May 25, 1901, for July 1, 1900, and March 4, 1905, for May 25, 1901, leaving effective that portion of said section providing that, if any such child should thereafter die, before receiving his allotment of lands and moneys to which he would be entitled if living, the same should descend to his heirs according to chapter 49 of Mansfield's Digest of the Statutes of Arkansas. As no reason is perceived why Congress should have made any different provision regarding the allotments for children born prior to May 25, 1901, and those born subsequent to that date, the above suggested construction would seem reasonable. If that construction is accepted, then the heirs and their interests must be determined by the Arkansas law, and the land was not subject to restriction. Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198; Washington v. Miller, 235 U. S. 422, 35 Sup. Ct. 119, 59 L. Ed. 295; Priddy v. Thompson, 204 Fed. 955, 123 C. C. A. 277.

But if, as contended by some of the parties, the heirs in this case acquired the title by virtue of section 5 of the act of April 26, 1906 (chapter 1876, 34 Stat. 138), or section 32 of the act of June 25, 1910 (chapter 431, 36 Stat. L. 855), or both, the heirs and their respective interests must still be determined by the Arkansas law. Section 5 provides:

"That all patents or deeds to allottees in any of the Five Civilized Tribes to be hereafter issued shall issue in the name of the allottee, and if any such allottee shall die before such patent or deed becomes effective, the title to the lands described therein shall inure to and vest in his heirs, and in case any allottee shall die after restrictions have been removed, his property shall descend to his heirs or his lawful assigns, as if the patent or deed had issued to the allottee during his life, and all patents heretofore issued, where the allottee died before the same became effective, shall be given like effect."

Section 32 of the act of June 25, 1910, provides:

"Where deeds to tribal lands in the Five Civilized Tribes have been or may be issued, in pursuance of any tribal agreement or act of Congress, to a person who had died, or who hereafter dies before the approval of such deed, the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assigns of such deceased grantee as if the deed had issued to the deceased grantee during life."

In each of these last-mentioned acts it is provided that the title to the land shall inure to and vest in the heirs of the deceased allottee as if the patent or deed had issued to him during his lifetime. If the patent to the land in controversy had issued to Freeland Francis during his lifetime, it would have descended to his heirs on June 22, 1905, the date of his death. At that date the general law of descent and distribution in force in Indian Territory, as well as that specially in force in the Creek Nation as provided by the Supplemental Agreement

above quoted, was chapter 49 of Mansfield's Digest of the Statutes of Arkansas. If the title is to vest as if the patent had issued to Freeland Francis during his lifetime, then the controlling date is the date of his death June 22, 1905, and not December 4, 1907, the date the allotment was actually made.

But, even though the heirs in this case must find the justification of their claim of title in section 5 of the act of April 26, 1906, or section 32 of the act of April 25, 1910, or both, still the land came to them free from any restrictions upon alienation, because the restrictions, provided by section 16 of the Supplemental Agreement only attached to allotments made to living citizens in their own right. Skelton v. Dill, supra. Applying the Arkansas law, it follows that one-half of this land vested by the allotment and patent to Freeland Francis after his death in the plaintiff Annie Harris, his mother, and one-half in the heirs of his father, William Francis. Section 2531, Mansfield's Digest; Shulthis v. McDougal, 170 Fed. 529, 95 C. C. A. 615; McDougal v. McKay, 237 U. S. 372, 35 Sup. Ct. 605, 59 L. Ed. 1001. The heirs of William Francis are Mack Francis, Amos Francis, and Elizabeth Francis, each of whom took one-third of the one-half passing to the heirs of William Francis, or one-sixth of the whole.

It follows that the deed from the plaintiff to Laura L. McGinnis dated January 15, 1908, conveyed all of plaintiff's interest in the land in controversy. The defendant Harry Bell therefore took no interest in the land by virtue of plaintiff's subsequent deed to him.

The deed of W. J. Cook, as guardian of Amos Francis and Elizabeth Francis, to Lightsey and Taylor, made upon order of the county court of Okmulgee county, and approved and confirmed by that court, conveyed to said Lightsey and Taylor all the interest of said minors in said land. The subsequent oil and gas lease of said minors to the Hoppy Toad Oil & Gas Company therefore conveyed no interest in said land to that company.

Counsel for Lamb and Brady states in his brief that these defendants claim no interest in the title as disclosed by the record. The record fails to show service upon A. B. Miller, so that his interest, if any, in the land involved cannot be affected by the decree. As against the other defendants claiming under Mack Francis, his deed of April 9, 1910, to Maude Mitchell conveyed to her his one-sixth interest in the land. At her death intestate on September 17, 1911, her interest passed in equal parts to her husband, J. Orlando Mitchell, and her daughter, Gertrude Womack. The interest thus inherited by J. Orlando Mitchell has passed by series of mesne conveyances to the defendant Gill.

It follows that decree must enter against the plaintiff and in favor of the several defendants found to have an interest in the property. If counsel can agree upon form of decree, the same may be prepared and presented for signing and entry. If counsel do not so agree before Monday, July 10th next, the court will on that date, at 10 o'clock a. m., at Muskogee, hear counsel and determine the form of decree to be entered herein.