## JESSE et al. v. CHAPMAN et al.

No. 8928—Opinion Filed May 21, 1918.

(173 Pac. 1044.)

(Syllabus.)

1. **Indians—Devolution of Allotment—What Law Governs.**

The devolution of an allotment on behalf of a deceased Creek citizen, made June 30, 1902, is governed by the Creek law of descent and distribution.

2. **Same.**

Where an allotment on behalf of a deceased Creek citizen was made under section 28, of the Original Creek Agreement (Act March 1, 1901, c. 676, 31 U. S. Stat. 870), in the name of the allottee, title vests in the heirs by operation of law.

3. **Same—Title of Heirs.**

The law in force at the date of the allotment controls as to when the title vests in the heirs.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action to try title, etc., by Bunnie Jesse and others against James A. Chapman and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

James M. Hays, P. A. M. Hoodenpyl, and John T. Hays, for plaintiffs in error.

Harry H. Rogers, John Rogers, J. W. Woodford, J. E. Thrift, and C. J. Davenport, for defendants in error.

J. P. Campbell, amicus curiae.

OWEN, J. This action was begun by plaintiffs in error, in the district court for Creek county, to try title and recover possession of certain lands allotted in the name of Ullie Eagle, a citizen of the Creek Nation. Ullie Eagle died, without issue, on June 8, 1902. The land in question was arbitrarily allotted, and the allotment certificate issued in her name June 30, 1902. Patents were issued in her name and recorded in the office of the Dawes Commission, but never delivered. The Commission wrote the word "Canceled" across the face of these deeds after they were recorded, and on October 29, 1904, issued a deed to the "heirs" of Ullie Eagle, without naming them. The question presented is whether the title vested in the heirs on June 30, 1902, the date of the allotment certificate, or on October 29, 1904, the date of the patent to the "heirs."

It is conceded that, if the title vested on June 30, 1902, descent was cast according to the Creek laws, and is in defendants in error Chapman and Jones, under proper conveyance from Nellie Fish, the nearest relation of Ullie Eagle. On the other hand, if title passed October 29, 1904, by virtue of the deed to the heirs, descent was cast under the provisions of the Arkansas law, and plaintiffs in error take an interest in the land as heirs of Ullie Eagle.

Plaintiffs in error contend that the allotment certificate and patents issued in the name of Ullie Eagle were a nullity, for the reason that, Ullie Eagle having died prior to their issuance, they were never delivered, and that title passed to the heirs by virtue of the deed issued October 28, 1904. The defendants in error contend that, when the land was allotted to Ullie Eagle, title passed by operation of law to her heirs, and the trial court so held.

This allotment was made under section 28 of the Original Creek Agreement (31 U. S. Stat. at L. 861), which provides:

"All citizens who were living on the first day of April eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eight, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

When the land was set apart under this section as the allotment of Ullie Eagle, and the certificate and patents issued in her name, title vested in the heirs by operation of law, and it was not necessary that the certificate or the patents be delivered to

Ullie Eagle, or to any person for her. In the case of Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198, it was said:

"Two or three years after the child's death his name was regularly placed upon the roll of Creek citizens by the Commission to the Five Civilized Tribes, and the lands in question were duly embraced in an allotment made on his behalf. A deed for them was also issued in his name, and this, by operation of law, vested the title in his heirs."

In the case of United States v. Schurz, 102 U. S. 378, 26 L. Ed. 167, it was said:

"Title by patent from the United States is title by record; and delivery of the instrument to the grantee is not essential to pass the title as in conveyances by private persons."

It makes no difference in this case that the Dawes Commission, after issuing and recording the deeds in Ullie Eagle's name, wrote the word "Canceled" across the face of same. When the allotment certificate issued, the right to the patent from the government was complete, and the equitable title to the land vested at once in her heirs. In the case of Stark v. Starr, 6 Wall. 418, 18 L. Ed. 925, it was said:

"The right to a patent once vested is treated by the government, when dealing with the public lands, as equivalent to a patent issued. When, in fact, the patent does issue, it relates back to the inception of the right of the patentee, so far as it may be necessary to cut off intervening claimants."

In the case of Godfrey v. Iowa Land & Trust Co., 21 Okla. 293, 95 Pac. 792, it was held that equitable title to an allotment in the Seminole Nation passed on selection of the allotment, and the duty or obligation to issue a patent was imperative. In that case it was also said:

"The Supreme Court of the United States and other courts have uniformly held that the patent, issued to the purchaser by the government, is not a new acquisition of title. It is only a confirmation of the right which the patentee had before the patent was issued."

It is urged that this section of the Original Creek Agreement, in providing that the land shall be allotted and distributed to the heirs, requires the patent be issued in the name of the heirs. The purpose of this provision, as we view it, is to vest title by operation of law, and it is immaterial whether the deed issued in the name of the allottee or to the heirs. In the case of Mullen v. U. S., 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834, it was said:

"It is true that under the Creek Agreement, in cases where the ancestor died before allotment, the lands were to be allotted directly to the heirs, while under the Choctaw and Chickasaw Agreement the allotment was to be made in the name of the deceased member and 'descend to his heirs.' This, however, is a merely formal distinction and implies no difference in substance. In both cases the lands were to go immediately to the heirs."

In the case of Woodward v. De Graffenried, 238 U. S. 284, 35 Sup. St. 764, 59 L. Ed. 1310, the allotment was selected by the allottee during her lifetime, but confirmed under the terms of the Original Creek Agreement after her death, and in that case it was said:

"That which had been tentative and provisional then became, by force of the provisions of the Agreement, final and conclusive. The result was to vest a complete equitable title in her 'heirs,' to be determined according to the Creek laws of descent and distribution. * * * It is, perhaps, unnecessary to say that the subsequent issue of a patent to the 'heirs of Agnes Hawes.' without naming them, conveyed the legal title to those persons upon whom the equitable title was conferred by the Original Agreement."

The allotment was made, for the purposes of this case, on June 30, 1902. Title passed to the heirs of the allottee by operation of law under the laws in force at that time. Bruner v. Normeyer. 64 Okla. 163, 166 Pac. 126; Brady v. Sizemore. 33 Okla. 169, 124 Pac. 615; Id.. 235 U. S. 440, 35 Sup. Ct. 135, 59 L. Ed. 308; Woodward v. De Graffenried, supra.

In the case of U. S. v. Bessie Wildcat et al., 244 U. S. 111, 37 Sup. Ct. 561, 61 L. Ed. 1024, the facts were identical with the facts here as to the selection of the allotment and issuance of certificate and patents. In that case the allotment was arbitrarily made in the name of Barney Thlocco, and certificate of allotment issued on June 30, 1902. The patents issued in his name and were recorded in the office of the Dawes Commission on April 11, 1903. Neither the certificate nor the patents were delivered. Afterward the Secretary of the Interior, acting on the information that Barney Thlocco died prior to April 1, 1899, directed the Dawes Commission to strike his name from the roll of the Creek citizens, and suit was brought to cancel the patents. Among other things, it was contended the patent was void because Thlocco was dead at the time the deed was issued in his name. The action of the Secretary in canceling the allotment was without

notice to the heirs of 'Barney Thlocco, and it was held this attempted cancellation was entirely ineffectual to annul the previous action of the government in placing Thlocco's name on the roll and issuing the certificate and patents in his name. It was also held:

"The fact that Thlocco was dead at the time the deeds were issued in his name would not prevent the title from vesting in his heirs [quoting section 28 of the Original Agreement]. The effect of this provision is to vest title in the heirs by operation of law. Skelton v. Dill, 235 U. S. 206 [35 Sup. Ct. 60, 59 L. Ed. 198].

"As to the contention that the lands were not selected by Thlocco, and he was one of those arbitrarily placed upon the rolls, we think it was within the authority of the Commission to enroll members of the tribe who for any reason refused to make selections."

It follows that the judgment of the trial court, holding that title passed to the heirs of Ullie Eagle as of June 30, 1902, according to the Creek law of descent and distribution, must be affirmed.

All the Justices concur, except MILEY, J., being disqualified, not participating.