## UNITED STATES v. SMITH et al.

(District Court, E. D. Oklahoma. May 15, 1920.)

No. 2499.

**Indians ⬦⟶15(2)—Restrictions on alienation removed by Secretary in particular case not reimposed by statute.**

Section 19, Act April 26, 1906, providing that "no full-blood Indian * * * shall have power to alienate * * * in any manner any of the lands allotted to him for a period of 25 years from and after the passage and approval of this act, unless such restrictions shall, prior to the expiration of said period, be removed by act of Congress," held to have the effect of reimposing restrictions theretofore removed by operation of law, but not to render invalid a subsequent conveyance by a full-blood Cherokee Indian of his surplus allotment, where previous to the passage of the act, under a prior law, the Secretary of the Interior had approved the recommendation of the Indian agent, made after a quasi judicial investigation, and removed the restrictions in the particular case, and his approval had been recorded in the same manner as patents are recorded.

In Equity. Suit by the United States against F. M. Smith and others. On motion to strike defendants' answer. Overruled.

Archibald Bonds, U. S. Atty., and L. K. Pounders, Sp. Asst. U. S. Atty., both of Muskogee, Okl.

O. L. Rider, of Vinita, Okl. and Joseph A. Gill, of Tulsa, Okl., for defendants.

WILLIAMS, District Judge. The land to which title is involved in this action was allotted to Ben Carpenter, a full-blood Cherokee Indian, as his surplus. Thereafter, to wit, on January 9, 1906, said allottee made application to the United States Indian agent at the Union Agency for the Five Civilized Tribes for the removal of restrictions as to said surplus allotment. Said agent, having made due investigation thereon, recommended that restrictions on said land as to alienation be removed, which said recommendation was approved by the Secretary of the Interior on March 27, 1906, "to be effective 30 days from date." This operated to remove restrictions as to alienation of said surplus allotment effective on April 25, 1906. Lanham v. McKeel, 244 U. S. 582, 37 Sup. Ct. 708, 61 L. Ed. 1331. However, in the view taken of this case when the instrument removing restrictions had been recorded as in case of the patent and delivered to the allottee prior to April 26, 1906, it is immaterial as to whether it became effective prior to, on, or subsequent to said date.

Section 19 of Act April 26, 1906 (34 Stat. 137), provides:

"That no full-blood Indian * * * shall have power to alienate * * * in any manner any of the lands allotted to him for a period of twenty-five years from and after the passage and approval of this act, unless such restrictions shall, prior to the expiration of said period, be removed by act of Congress; and for all purposes the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior; Provided, however, That such full-blood Indians of any of said tribes may lease any lands other than

⬦⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

homesteads for more than one year under such rules and regulations as may be prescribed by the Secretary of the Interior; and in case of the inability of any full-blood owner of a homestead, on account of infirmity or age, to work or farm his homestead, the Secretary of the Interior, upon proof of such inability, may authorize the leasing of such homestead under such rules and regulations: Provided further, that conveyances heretofore made by members of any of the Five Civilized Tribes subsequent to the selection of allotment and subsequent to the removal of restriction, where patents thereafter issue, shall not be deemed or held invalid solely because said conveyances were made prior to issuance and recording or delivery of patent or deed; but this shall not be held or construed as affecting the validity or invalidity of any such conveyance, except as hereinabove provided; and every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void: Provided further, that all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

The question here is whether the alienation by Ben Carpenter, an enrolled full-blood Cherokee Indian, as to his surplus allotment, the removal of restrictions as to which had been made by the Secretary of the Interior and become effective prior to April 26, 1906, is within the prohibition of said section 19, so as to suspend said act of the Secretary. An act of alienation might be clearly within the prohibition of the language of the statute contemplating the reimposing of restrictions removed by legislative act, and yet not be within the prohibition when it relates to the removal of restrictions as to the alienation of surplus allotment of a full-blood member of the Five Civilized Tribes by an act of the Secretary of the Interior, which was preceded by a quasi judicial investigation. Before we decide whether the particular act is within the words of the statute, we should first consider whether the particular class of acts to which this belonged is within the purpose of the statute. Holy Trinity Church v. United States, 143 U. S. 467, 12 Sup. Ct. 511, 36 L. Ed. 226; United States v. Union Bank of Canada (C. C. A.) 262 Fed. 91; De Hasque v. A., T. & S. F. Ry. Co. (Okl.) 173 Pac. 73, L. R. A. 1918F, 259.

It is a well-recognized rule for the construction of statutes that the terms employed by the Legislature are not to receive an interpretation which conflicts with acknowledged principles of justice and equity, if another sense, consonant with those principles, can be reasonably given to them, unless the expressed intent is so clear as to remove it from the domain of the application of rules of construction. This rule should also apply to legislation by Congress relating to Indians, when at the same time the expressed public policy of the government towards such wards is followed. Such policy is that such wards shall be under the direct supervision of the Department of the Interior. By section 19, the quantum of Indian blood possessed by any member of said tribes shall be determined by the rolls of citizens of said tribes approved by the Secretary of the Interior, and such full-blood Indians of any of said tribes may lease any lands other than homesteads for more than one year under such rules and regulations as may be prescribed by the Secretary of the Interior; and in case of the inability of any full-blood owner of a homestead, on account of infirmity or age, to work or farm his homestead, the Secretary of the Interior,

upon proof of such inability, may authorize the leasing of such homesteads under such rules and regulations.

Section 18 of said act authorizes the Secretary of the Interior to bring suit in the name of the United States, for the use of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes, respectively, either before or after the dissolution of the tribal governments, for the collection of any moneys or recovery of any land claimed by any of said tribes, and the Secretary of the Interior is authorized to pay from the funds of the tribe interested any costs and necessary expenses incurred in maintaining and prosecuting such suits.

Section 20 provides that after the approval of said act all leases and rental contracts, except leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Tribes shall be in writing and subject to approval by the Secretary of the Interior, and shall be absolutely void and of no effect without such approval, with the proviso that allotments of minors and incompetents may be rented or leased under order of the proper court.

Section 21 provides that, if any allottee of the Choctaw, Chickasaw, Cherokee, Creek, or Seminole Tribes die intestate, without widow, heir or heirs, or surviving spouse, seized of all or any portion of his allotment prior to the final distribution of the tribal property, and such fact shall be known by the Secretary of the Interior, the lands allotted to him shall revert to the tribe and be disposed of as therein provided for surplus lands; but if the death of such allottee be not known by the Secretary of the Interior before final distribution of the tribal property, the land shall escheat to and vest in such state or territory as may be formed to include said lands.

Section 22 provides that the adult heirs of any deceased Indian of either of the Five Civilized Tribes, whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs or belonged, may sell and convey the lands inherited from such decedent; and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States court for the Indian Territory, and in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe.

That it was the policy of the federal government through the instrumentality of the Secretary of the Interior and the department of which he is the head to supervise the estates of the members of the Five Civilized Tribes is thus disclosed. However, section 19 not only reimposes, but also extends, restrictions, as will hereinafter be pointed out, for a fixed period until "such restriction shall, prior to the ex-

piration of said period, be removed by act of Congress." Such removal of restrictions as to alienation by act of the Secretary of the Interior as to members of the Five Civilized Tribes under section 1 of the act of May 27, 1908, 35 Stat. 312, extends to homesteads of said allottees enrolled as mixed-blood Indians having one-half or more than one-half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods and all lands of enrolled mixed-bloods of three-fourths or more of Indian blood, including minors of such degrees of blood, the reservation as to restrictions thereon being:

"Shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe. The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act."

Said section 1 had the effect of repealing by substitution section 19 of the Act of April 26, 1906.

What is meant by "the Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore"?

"When several acts of Congress are passed touching the same subject-matter, subsequent legislation may be considered to assist in the interpretation of prior legislation." Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738.

The Seminole Agreement, adopted by said tribe on December 16, 1897, and ratified by act of Congress July 1, 1898 (30 Stat. 567), prohibits the sale, disposition, or incumbrance of any allotted lands of said tribe prior to date of patent, and when so made such instrument is to be void. Goat v. United States, 224 U. S. 462, 32 Sup. Ct. 544, 56 L. Ed. 841; Godfrey v. Iowa Land & Trust Co., 21 Okl. 298, 95 Pac. 792. No restrictions as to alienation of lands in the Seminole Tribe whatever were removed prior to act of April 21, 1904.

Section 28 of what is known as the Original Creek Agreement (31 Stat. 869) provides:

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eight, eighteen hundred and ninety-eight, * * * shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands * * * the lands * * * to which he would be entitled, if living, shall descend to his heirs. * * *"

Sections 7 and 8 of the Supplemental Creek Treaty (Act June 30, 1902, 32 Stat. 500) each provide:

"* * * And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein provided and be allotted and distributed to them accordingly."

The lands, when allotted by virtue of said sections of said treaties, vested free from restrictions as to alienation. Skelton v. Dill, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. 198; Adkins v. Arnold, 235 U. S. 417, 35 Sup. Ct. 118, 59 L. Ed. 294; Rentie. v. McCoy, 35 Okl. 78, 128 Pac. 244.

Section 22 of the Supplemental Agreement with the Choctaws and Chickasaws (Act July 1, 1902, 32 Stat. 641) provides:

"If any person whose name appears upon the rolls, prepared as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land the lands to which such person would have been entitled if living shall be allotted in his name, and shall * * * descend to his heirs: * * * Provided, that the allotment thus to be made shall be selected by a duly appointed administrator or executor. * * *"

Such allotted lands descended to the heirs free from restrictions. Mullen v. United States, 224 U. S. 453, 32 Sup. Ct. 494, 56 L. Ed. 834; Brader v. James, 246 U. S. 89, 38 Sup. Ct. 285, 62 L. Ed. 591.

Section 20 of the Cherokee Agreement (Act Cong. July 1, 1902, 32 Stat. 716) provides:

"If any person whose name appears upon the roll prepared as herein provided shall have died subsequent to the first day of September, nineteen hundred and two, and before receiving his allotment, the lands to which such person would have been entitled if living shall be allotted in his name, and shall * * * descend to his heirs: * * * Provided, that the allotment thus to be made shall be selected by a duly appointed administrator. * * *"

Such lands descend to the heirs free of restrictions. Talley v. Burgess, 246 U. S. 104, 38 Sup. Ct. 287, 62 L. Ed. 600. At the time of the passage of the act of April 21, 1904 (33 Stat. 189), all land in the Cherokee, Chickasaw, Choctaw, and Creek Nations, other than those allotted under said section 28, Original Creek Treaty, and sections 7 and 8, Supplemental Creek Treaty, and section 22, Choctaw and Chickasaw Supplemental Agreement, and section 20, Cherokee Agreement, were then restricted as to alienation, except where such restrictions had been removed from the land by death occurring subsequent to allotment. Under the Original and Supplemental Creek Agreements (31 Stat. 869; 32 Stat. 500), Original and Supplemental Agreements with the Choctaws and Chickasaws (30 Stat. 505; 32 Stat. 641), and Cherokee Agreement (32 Stat. 716), none of the periods prescribed for the freeing of either the homesteads or surplus allotments from restrictions by operation of law had expired on April 26, 1906. So at the time of the passage of the said act of April 26, 1906, no allotted lands in the Five Civilized Tribes had been freed from such restrictions subsequent to April 21, 1904, by operation of law or otherwise, except where occasioned by the subsequent death of the allottee or through recommendation of the Superintendent of the Five Civilized Tribes at the Union Agency, by a quasi judicial hearing and investigation in particular cases, and the approval of the Secretary of the Interior. Such quasi judicial investigation and determination was under the following requirements of Congress:

That "upon application to the United States Indian agent at the Union Agency in charge of the Five Civilized Tribes, if said agent is satisfied upon a full investigation of each individual case that such removal of restrictions

*is for the best interest of said allottee. The finding of the United States Indian agent and the approval of the Secretary of the Interior shall be in writing and shall be recorded in the same manner as patents for lands are recorded.*" (Italics mine.) 33 Stat. 204.

Can it be said that a consideration of these acts in pari materia demonstrates the purpose of Congress to invalidate the removal of restrictions in particular cases as to the surplus allotments when same had been removed by the Secretary of the Interior, where the allottee had not granted or conveyed such land for value prior to April 26, 1906? The approval of the Secretary in writing prior to April 26, 1906, "to be effective thirty days from date," and recorded in the same manner as the patent or patents for such land, when delivered to the allottees prior to April 26, 1906, though said 30 days had not elapsed prior to said date, is as effective as the approval, recording, and delivery at a prior date, where such 30 days had elapsed before April 26, 1906, and no conveyance theretofore had been executed and delivered; for such, as a completed act, was beyond recall by the Secretary, unless it be in cases of fraud practiced in securing such approval or removal of restrictions. Congress is not presumed to have intended to work an injustice. Such removal or approval having been made and recorded in the manner as the patents to such land, purchasers would reasonably and in all probability act upon that chain of title and make an outlay thereon. The terms employed in said act should not receive an interpretation which would conflict with acknowledged principles of justice and equity, when at the same time a construction may be adopted harmonizing with principles of justice and equity, and also according with the expressed public policy of the government in having the lands and the property of its wards under the supervision and administration of the Secretary of the Interior.

Another analogous principle in rules of construction supports this conclusion. The particular act of the Secretary of the Interior in removing restrictions or approving recommendations for such purpose as it relates to the general act in reimposing restrictions removed by virtue of said section 28 of the Original Creek Agreement and sections 7 and 8 of the Supplemental Creek Agreement and section 22 of the Supplemental Choctaw and Chickasaw Agreement, as it amended the original agreement with the Choctaws and Chickasaws, and section 20 of the Cherokee Agreement, and the extending of the period for the removal of restrictions as fixed by said agreements, bears the same analogy by relation as a special to a general act of legislation.

It is a prevailing rule in the construction of statutes that specific legislation relating to a particular thing is not effected by general legislation in regard to classes or subjects of which that covered by the specific or particular thing is one, unless it clearly appears that the general legislation is so repugnant to the special legislation that the legislators must be presumed thereby to modify or repeal it. The special and the general legislation must stand together, the former as the law of the particular object or subject, and the latter as the general law upon other subjects or classes within its terms.

The order of removal of restrictions and approval of the recommendation by the Superintendent for the Five Civilized Tribes at the Union

Agency, after a full investigation and when he was satisfied such removal of restrictions was for the best interest of the allottee, was recorded in the same manner as the patent and delivered to the allottee. There is neither allegation of fraud nor that the purchase money was not actually paid. Said section had the effect, such being both within the letter and purpose of the act, of reimposing restrictions which had been removed by operation of law, and without the intervention of a hearing in which the exercise of judicial power was applied by an administrative agency (section 28, Original Creek Agreement; sections 7 and 8, Supplemental Creek Agreement; section 22, Supplemental Choctaw and Chickasaw Agreement amending the original agreement; section 20, Cherokee Agreement), and also of extending the restriction period as fixed in said agreements, but not of nullifying or suspending the act of the Secretary of the Interior in removing restrictions in the case at bar.

An order will be entered, overruling plaintiff's motion to strike defendant's answer.