## NIXON et al. v. GOOD et al.

No. 10850—Opinion Filed July 18, 1922.

(Syllabus.)

1. **Indians—Lands—Restrictions on Alienation—Inherited Creek Homesteads.**

Supplemental Creek Agreement of June 30, 1902, c. 1325, sec. 16, 32 Stat. 503, declaring that lands allotted to citizens shall not be alienated by the allottee or his heirs before the expiration of 5 years from date of approval of the agreement, except with the approval of the Secretary of the Interior, that each citizen shall select a homestead, which shall be inalienable for 21 years, and that the homestead of each citizen shall remain after the death of the allottee for the support of children born to him after May 25, 1901, but if he have no such issue, then he may dispose of his homestead by will "free from the limitation here imposed," and if this be not done the homestead shall descend to his heirs "free from such limitation," removes homesteads of such allottees as died intestate, leaving no issue born after May 25, 1901, from the restrictions, and they are subject to sale by heirs; the word "limitation" being used interchangeably with the word "restriction," and referring to the restrictions provided for.

2. **Same—Validity of Unapproved Deed.**

John Cox, a Creek Indian of the half blood, received a homestead allotment, and died July 10, 1903, after receiving patent, without children born after May 21, 1901, and leaving as one of his heirs Adeline Bruner, an adult full-blood Creek, who inherited an undivided one-fourth interest in said homestead. On March 11, 1905, Adeline Bruner conveyed her interest in said homestead by warranty deed without the approval of the Secretary of the Interior or any of the agencies of the United States Government. Held, under and by virtue of section 7 of the act of March 1, 1901, Original Creek Agreement, 31 Stat. L. 861, and section 16, Supplemental Act of June 30, 1902, 32 Stat. L. 500, said homestead allotment was unrestricted at the time of executing the deed, March 11, 1905, and conveyed a good title without the approval of the Secretary of the Interior.

3. **Courts—Stare Decisis.**

Where a series of decisions of a court of last resort have been accepted and acted upon as the proper interpretation of the law for a long time, courts are slow to interfere with principles announced in the former decisions, and often uphold them even though they would decide otherwise were the question a new one.

Error from District Court, Tulsa County; Owen Owen, Judge.

Action by J. Truman Nixon and Adeline Bruner against Walter L. Good, Charles W. Good, and Laura P. Lefler to recover inter-

est in land. Judgment for defendants, and plaintiffs bring error. Affirmed.

Bird McGuire, Edward P. Marshall, and C. R. Nixon, for plaintiffs in error.

W. J. Gregg, for defendants in error.

McNEILL, J. This action was commenced by plaintiffs in error against the defendants in error to recover an interest in a certain piece of real estate situated in Tulsa county. The facts are substantially as follows:

The land in question was the homestead allotment of John Cox, deceased, a Creek Indian of the half Indian blood who died after receiving patent in 1903, leaving no children born after May 21, 1901. Adeline Bruner, a full-blood Creek, was one of the heirs of John Cox. J. Truman Nixon claims his title to the homestead by virtue of a deed from Adeline Bruner dated June 26, 1912, and approved by the county court of Wagoner county. The defendants claim title by virtue of a deed from Adeline Bruner dated March 11, 1905, to Charles Wilson. Said deed was never approved by the Secretary of the Interior or by the county court of any county, and Wilson conveyed the land to defendants in error. The question for consideration is whether the homestead, upon the death of John Cox, was restricted under section 7 of the Original Creek Agreement, act of March 1, 1901, 31 Stat. L. 861, and under section 16 of the Supplemental Agreement, act of June 30, 1902, 32 Stat. L. 500. Section 7 of the act of March 1, 1901, in regard to the homestead after the death of allottee, reads as follows:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, free from such *limitation.*"

Section 16 of the Supplemental Agreement, relating to the homestead after the death of the allottee, reads as follows:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue, then he may dispose of his homestead by will, free from the limitation herein imposed, and if this be not done, the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed."

The Circuit Court of Appeals construed the acts of Congress, supra, and held the homestead, upon the death of the allottee, where there were no children born after May 25, 1901, descended to the heirs free from restriction. U. S. v. Cook, 225 Fed. 756, 141 C. C. A. 22. The court in the syllabus stated as follows:

"Supplemental Creek Agreement of June 30, 1902, c. 1323, sec. 16, 32 Stat. 503, declaring that lands allotted ro citizens shall not be alienated by the allottee or his heirs before the expiration of five years from date of approval of the agreement, except with the approval of the Secretary of the Interior, that each citizen shall select a homestead, which shall be inalienable for 21 years, and that the homestead of each citizen shall remain after the death of the allottee for the support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will 'free from the limitation here imposed', and if this be not done the homestead shall descend to his heirs 'free from such limitation', removes homesteads of such allottees as died intestate, leaving no issue born after May 25, 1901, from the restrictions, and they are subject to sale by heirs; the word 'limitation' being used interchangeably with the word 'restriction', and referring to the restrictions provided for."

The opinion of the Circuit Court of Appeals was decided June 14, 1915, and was an action commenced by the United States on behalf of the Attorney General, and no appeal was taken by the United States from said decision.

The exact question was passed on by this court in the case of Oates et al. v. Freeman, 57 Okla. 449, 157 Pac. 74. The court there cited the case of United States v. Cook, supra. The court in the 4th paragraph of the syllabus stated as follows:

"Where a Creek Indian dies prior to allotment, the allotment must be made under section 28 of the Creek Agreement (Act March 1, 1901, c. 676, 31 Stat. 869), as amended by the Supplemental Creek Agreement (Act June 30, 1902, c. 1323, 32 Stat. 500), and it descends to his heirs, free from all restrictions, both as to the homestead and surplus, but where the allottee dies after the certificate of allotment has issued, but before patent, the homestead descends free from restrictions, but the surplus is restricted."

This decision held that upon the death of the allottee, there being no children born after the allotment act, May 25, 1901, the title to the homestead of the deceased allottee vested in the heirs free from all restrictions against alienation, without approval by the Secretary of Interior or any

other governmental agency up until the time of taking effect of the act of Congress of April 26, 1906.

Counsel for plantiffs in error in a very able and extensive brief argue, by applying certain rules of construction, the decisions in the case of Oates v. Freeman, supra, and United States v. Cook, supra, are erroneous. These decisions have not been appealed from, and have been the law governing this class and character of real estate since June 14, 1915. The opinions have never been criticised, and have been accepted as the law governing the sale of that class and character of land since said time.

In the case of Inman v. Sherill, 29 Okla. 100, 116 Pac. 126, this court stated as follows:

"Where a series of decisions of a court of last resort have been accepted and acted upon as the proper interpretation of the law for a long time, courts are slow to interfere with principles announced in the former decisions, and often uphold them even though they would decide otherwise were the question a new one."

This case was cited and approved in the case of McCray v. Miller, 78 Okla. 16, 184 Pac. 781, 186 Pac. 1089. In the case of Hines v. Driver, 89 Ind. 339, it is said:

"When a court comes to the deliberate conclusion that it has made a mistake, it is better * * * that it frankly acknowledge its mistake and declare the true doctrine, as it should have been. When, however, a decision has become an established rule of property, it is not to be overthrown, except from the most urgent consideration of public policy."

It is apparent that lands under similar conditions have been sold throughout the Indian Territory, and the parties purchasing the same relied upon the decisions of this court and the Circuit Court of Appeals, and those decisions should not be overthrown except by an urgent consideration of public policy or that they were clearly and fundamentally erroneous. It is sufficient to say that the acts of Congress under consideration are subject to the construction placed upon them in the above entitled cases, and the court does not feel they should be disturbed. This is the only question briefed by plaintiffs in error, and decides all the issues in the case. For the reasons stated, the judgment of the trial court is affirmed.

JOHNSON, ELTING, KENNAMER, and NICHOLSON, JJ., concur.