## McGIRT et al. v. BURNS et al.

No. 16020—Opinion Filed Jan. 26, 1926.

Rehearing Denied May 11, 1926.

1. **Indians — Guardianship of Minor Full-Blood Heirs — Sale of Inherited Allotments for Lump Sum—Invalidity as to Homestead Portion.**

Where a guardian of full-blood Indian minor heirs, born after March 4, 1906, conducts a guardianship sale of both the homestead and surplus portion of the mother's allotment inherited by them, and the sale is approved by the county court having jurisdiction, and both the homestead and surplus are conveyed by the guardian to the purchaser in one deed, and without reference to a portion thereof being the homestead allotment, and for a lump sum consideration, in the absence of other wrong in the proceedings, the deed is good as to the surplus portion of the inherited allotment and passes title thereto, but is absolutely void and ineffective to pass title to the homestead portion of the inherited allotment.

2. **Same—Judgment Sustained.**

Record held to require that the judgment be affirmed.

(Syllabus by Shackelford, C.)

Commissioners' Opinion, Division No. 4.

Error from Superior Court, Okmulgee County; J. H. Swan, Judge.

Action by Lena McGirt, a minor, by her next friend, John McGirt, against Robert R. Burns, William P. Morton, Willie Harjo, G. L. Sandlin, Fred E. Storm, and Woodson W. Bassett. From the judgment Lena McGirt and Willie Harjo, a minor, by Lafayette Walker, guardian ad litem, and John McGirt, his guardian, prosecute appeal. Affirmed.

Bettie Miller was a full-blood Creek Indian woman, so enrolled; and to her was allotted certain lands, amounting to approximately 160 acres, the homestead 40 acres and the surplus portion of the allotment being separately described and conveyed to her by government patents. She was the mother of two full-blood Creek Indian children, Lena McGirt and Willie Harjo, both born after March 4, 1906. Bettie Miller died, leaving the said two children as her sole heirs at law; and to them descended her allotted lands, subject to the restrictions imposed by the Act of Congress of May 27, 1908. There was no removal of restrictions imposed by

the said Act of Congress, by the Secretary of the Interior.

One Thomas Thompson was appointed guardian of the said two minors. In 1917 a guardianship sale was conducted by the guardian in the county court having jurisdiction; and the entire allotment of Bettie Miller was sold and conveyed by the guardian to one Robert R. Burns for the sum of $600; and the purchaser went into possession and afterwards executed conveyances affecting some or all of the said allotment.

On the 7th of December, 1920, one of the heirs, Lena McGirt, then a minor, by her next friend, John McGirt, filed a suit in the superior court of Okmulgee county, attacking the validity of the guardian's deed and mesne conveyances in so far as they affected the homestead portion of the allotment. Later, and on January 11, 1921, an amended petition was filed by the same plaintiff, attacking the validity of the said guardian deed in its entirety, and seeking recovery of an undivided one-half interest in the entire allotment, with the rents and profits, and to quiet title; the contention of the plaintiff being, in effect, that the homestead portion of the allotment was inalienable under the Congressional Act of May 27, 1908, and since the homestead and surplus were attempted to be conveyed together, and for an indivisible consideration, the entire guardianship conveyance and all subsequent conveyances are void. In the amended petition the plaintiff tenders into court, for the use and benefit of whomsoever may be entitled thereto, the sum of $300 with 6 per cent. interest from the date of the guardian sale; this amount representing one-half of the purchase money paid at the guardian sale. It was admitted by the purchaser at the guardian sale, and those claiming by, through, and under him, that the sale was void in so far as the homestead portion of the allotment is affected.

The trial resulted in a judgment in favor of Lena McGirt and Willie Harjo for the homestead portion of their mother's allotment, and quieting title thereto; and in favor of the defendants for the surplus portion of the allotment and quieting title thereto according to the rights of the respective parties defendant. Lena McGirt and Willie Harjo prosecute appeal from that part of the judgment in favor of the defendants.

Herbert E. Smith and Lafayette Walker, for plaintiffs in error.

Joseph C. Stone, Charles A. Moon, Francis Stewart, Collins F. Gable, and Guy H. Woodward, for defendants in error.

Opinion by SHACKELFORD, C. The appellants will be referred to herein as plaintiffs, and the appellees as defendants. The plaintiffs present several assignments of error for reversal of the judgment of the trial court. The argument is presented under several propositions, stated in the brief of plaintiffs. It seems, however, that there is but one question to examine to properly dispose of the plaintiffs' appeal.

There is no doubt that the homestead portion of the deceased Indian's allotment was absolutely inalienable, since there had been no removal of restrictions by the Secretary of the Interior. All the parties are agreed upon this proposition. The parties are also agreed that a legal and valid sale of the surplus portion of the allotment could have been conducted by the guardian in the county court. The guardianship sale which was conducted is not attacked for fraud or irregularity, except upon the ground that the restricted homestead portion of the allotment was included in the sale proceedings, without the county court being advised that the wards of the guardian were born after March 4, 1906. Therefore, the one question to be determined is whether or not the inclusion of the restricted homestead portion of the allotment in the sale proceeding renders the sale proceeding void, and will have the effect of rendering the guardian deed invalid and void in its entirety. If this question shall be answered in the negative, the judgment of the trial court should be affirmed; but, if in the affirmative, the judgment of the trial court should be reversed and the case remanded.

If the sale and purchase of the land constituted a contract of sale and purchase, as between the guardian of the minors on the one side and the purchaser at the guardian sale upon the other part, the contract was wholly executed, since the guardian deed and the property were delivered to the purchaser and the purchase price paid to and received by the guardian. The deed describes the entire allotment, without any reference to a portion being the homestead; and the consideration was one lump sum of $600. The record seems to show this fact, and the trial court so found.

In Starr v. Lowery, 102 Okla. 48, 220 Pac. 467, a case in certain respects similar to the one here under consideration was before this court. The similarity between the two cases consists in the fact that in both, restricted and unrestricted portions of an Indian allotment were attempted to be conveyed. In the case cited Henry Starr sought to recover both

the restricted and unrestricted portion of the allotment sold by him on the theory that the sale was one, indivisible transaction, and the restricted portion of the allotment having been included in the conveyance, rendered the conveyance null, void and of no force whatever. This court held that since the transaction was executed in its entirety, the deed was in effect such a conveyance as the court would not relieve against in so far as it conveyed the unrestricted portion of the allotment. The plaintiffs in the instant case undertake to distinguish the case cited from this one, the distinction being mainly that in the Starr-Lowery Case the plaintiff was an adult Indian heir and was attacking his own voluntary conveyance, while here the transaction was conducted by the guardian of the minors, under the supervision of the county court, and amounted to an involuntary conveyance so far as the minor wards were concerned. It seems, however, that there is no difference in principle between contracts made by and between adult contracting parties, and contracts between the guardian of a minor ward and another party, where the guardian acts within his power conferred by law, and under the supervision of the county court having jurisdiction of the probate case. The guardian is appointed to conduct the business of the minor, who is incompetent because of minority, to act, and the contracts of the guardian are, to all intents and purposes, the contracts of the ward, in the absence of fraud or transgression of legal authority. It seems not to be disputed that if full-blood Indian heirs had made a conveyance after their majority, conveying the entire allotment of their mother, with the approval of the county court having jurisdiction of the decedent's estate, the holding in Starr v. Lowery, supra, would be controlling. In the absence of fraud, the contract of the guardian, acting within the scope of his power as such, is just as binding upon his minor wards as their own contract would be if they had been of age. In the very nature of things this must be so. Otherwise, it would be futile and entirely unnecessary to ever have a guardian for a minor. It is made the duty of the guardian to make contracts for and on behalf of his minor ward, where its interests are to be conserved and protected; and the minor is no more at liberty to repudiate a legal contract made by the guardian than would an adult be; and hence the applicable principles are the same whether the guardian makes the legal contract for them while minors, or they make the contract for themselves when adults.

Under the Act of May 27, 1908, these minors were denied full and complete ownership of the homestead portion of their mother's allotment; that is, they were limited in their rights as owners in the sense that they were without power to sell or alienate such homestead portion of the allotment. So far as selling such homestead portion of the allotment was concerned, they were in the same position as if they did not own it. Under the said congressional act they acquired the use and benefit of the homestead portion of the allotment, but without any legal right to alienate or sell it. So far as selling it was concerned, they were in the same position as if they had not been given any rights in it at all. Dominion over the homestead portion of the allotment was placed in the Secretary of the Interior, who was given the power, by the congressional act, to remove the restrictions or not, as he saw fit, and he had reposed in him such character of dominion at the time of the sale procedure, and had conferred no right to sell by removing the restrictions imposed. The minors did not own it for the purpose of alienation. As to the sale of the homestead portion they could no more pass title than if the title had been in another. It seems that the minors were not in a different position than they would have been if the ownership of the homestead portion of the allotment had not descended to them, or had descended to some other person. The guardian assumed to have the power to sell it, when in fact he did not. He assumed to have the title for and on behalf of the minor wards for the purpose of sale, when he did not because such right was withheld by the congressional act. Suppose the title to the homestead portion of the allotment had been in another, but the guardian had assumed on the part of his minor wards to have the right to sell it, and had included it along with the surplus portion, in which the right to sell is unquestioned, and had conveyed it all in one deed and one description of 160 acres of land, and the buyer had paid the full consideration and had accepted the deed and delivery of the land, the buyer assuming that he had a right to buy the whole tract. Would any different proposition be presented? It seems to us that this is precisely the situation which is presented. The effect of the act is to make any attempted sale of the homestead portion of the allotment void— that is, any contract of conveyance made would not take out of the minors title to the homestead portion of the allotment. The same thing would result if the title to the homestead portion of the allotment was in

another, that is, the deed would not operate to pass title to such homestead portion because the minors had no title. How far, then, would the court go in permitting the minor plaintiffs to prevail over the buyers in the cancellation of the entire deed because there had been included in the deed the homestead portion of the allotment, which they did not own? So far as we have been able to find, no court has ever held a conveyance absolutely void at the suit of the grantor, for the sole reason that there was included in it property which the grantor did not own, against the wishes of the grantees, who content themselves with the portion of the property which the grantor did own. There is no court decision we know of which would authorize this court to hold such a conveyance void at the suit of the grantor, even though he tenders back the money paid, where the grantee, in effect, says, "Keep the money, I am content with title to what you had a right to convey." In substance and effect that is precisely what the plaintiffs seek to do. They admittedly had the right to alienate the surplus portion of the allotment; but there was included the homestead portion which they did not own in the sense of having a right to convey it. The contract was fully executed. They tendered the purchase money back to the buyers, and asked the court to hold their conveyance utterly void as to all, even though the buyer said: "Keep all the money paid. I am content with title to what you had a right to sell."

In Kelley v. New State Land Co., 115 Okla. 170. 245 Pac. 988, a very similar question to the one under consideration was before the court for examination and decision. Mr. Commissioner Jarman wrote the opinion. The conveyance attacked in that case included the unrestricted homestead portion of an Indian allotment, with the restricted surplus portion of such allotment. Under the law at the time of making the conveyance, the Indian heir had the power to convey the homestead portion, but was without power to convey the surplus portion of the allotment. It was asserted by the grantor that the conveyance was utterly void and ineffective to vest title to any portion of the allotment. The similarity between that case and this one consists in the fact that in each of the conveyances both restricted and unrestricted Indian inherited lands were attempted to be conveyed. The conclusion reached by the learned Commissioner who prepared the opinion in that case was that the conveyance attacked was good as to the unrestricted portion of the allotment, and ineffective and a nullity in so far as it purported to convey restricted portions of the allotment. The conclusion reached was based upon the case of Starr v. Lowery, supra. We think that both Starr v. Lowery, and Kelley v. New State Land Company, supra, are properly based upon the broad principles of right and justice that, in the absence of fraud, where a grantor executed a conveyance and receives the full agreed purchase price, title passes to the purchaser to all of the property described which the grantor owns and has an unrestricted right to convey. We think the conclusions reached in these cases are controlling in the instant case.

The plaintiffs insist that the consideration paid, the sum of $600, is an indivisible and lump sum consideration, and there is no way to decide what part of it was to pay for the restricted and what part for the unrestricted portion of the land. This is true, but not controlling. The land described in the deed is divisible into the restricted and unrestricted portions, such matter being a question easily ascertainable by proof or admissions of the parties. The Indian allotment patents establish the matter beyond any controversy. The defendants are not seeking the return of any part of the consideration paid, and, hence, we are not concerned about what the parties thought was being paid for the restricted portion of the allotment.

The plaintiffs also insist that if the court holds the deed to be a good conveyance of the surplus portion of the allotment, the court will be in the attitude of making an entirely new and different character of contract between the parties to what they made between themselves, a thing which the court is not authorized to do. This is not rightly so; and the contention is unsound. The court is often called upon to examine contracts to determine what is good and enforceable and what is unenforceable, but in doing so the court is not in the attitude of making a new contract for the parties, but, rather, has the duty of declaring what the contract between the parties actually is. And where the court finds there has been included in a contract, subject-matter over which the parties had no power to contract, and such subject-matter is distinguishable from other subject-matter over which the parties had power to contract, it becomes the duty of the court to distinguish between the two characters of subject-matter, and hold that the contract as actually made related to the subject-matter over which the parties were authorized to contract.

The question above propounded, and de-

terminative of this appeal, must be answered in the negative, and an affirmance of the judgment must follow.

We have carefully considered all of the contentions made by the plaintiffs, and the authorities cited by them, and conclude that there is no error in the judgment of the trial court either requiring or justifying a reversal of the judgment.

The judgment is, therefore, affirmed.

By the Court: It is so ordered.

Note.—See under (1) 31 C. J. p. 520 § 91 (anno). (2) 4 C. J. p. 1129 § 3122.